946 So.2d 937 (2006)
Harold Lee HARVEY, Appellant,
v.
STATE of Florida, Appellee.
No. SC95075.
Supreme Court of Florida.
June 15, 2006.
Rehearing Denied January 8, 2007.
*940 Ross B. Bricker, Jeffrey A. Koppy and Ellen C. Lamond of Jenner and Block, Chicago, IL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
Harold Lee Harvey, a prisoner under a sentence of death, appeals an order of the trial court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We previously issued an opinion in this case which only addressed the issue of whether counsel was ineffective for conceding Harvey's guilt of first-degree murder. We found counsel was ineffective and remanded the case for a new trial. While rehearing was pending, the United States Supreme Court granted certiorari review of this Court's opinion in Nixon v. State, 857 So.2d 172 (Fla.2003), which addressed the same issue. The court reversed our decision, Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), and held that the proper standard to be applied in cases involving counsel's concession of guilt is the two-pronged test outlined in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, we issue this opinion on rehearing and address all of the issues raised in Harvey's motion for postconviction relief. The opinion issued on July 3, 2003, is withdrawn, and this opinion is substituted in its place. For the reasons set forth below, we affirm the trial court's denial of rule 3.850 relief.

FACTS AND PROCEDURAL HISTORY
Harvey was charged with two counts of first-degree murder in the killings of William and Ruby Boyd, which occurred during the course of a robbery at the Boyds' home. After obtaining money from the Boyds, Harvey and Scott Stiteler, the codefendant, discussed what they were going to do with the victims and decided they had to kill them. Harvey shot both victims. Harvey v. State, 529 So.2d 1083, 1084 (Fla.1988).
*941 At trial, Harvey was convicted of both counts of first-degree murder. The jury recommended death by a vote of eleven to one on each conviction. The sentencing judge found four aggravating circumstances[1] and as mitigating circumstances found Harvey had a low IQ and poor educational and social skills. Id. at 1088 n. 5.
On appeal, we affirmed Harvey's convictions and sentences of death. Id. at 1088. After the governor signed a death warrant on March 29, 1990, Harvey filed a petition for writ of habeas corpus with this Court along with a request for stay of execution. We issued a stay so that Harvey could seek relief under rule 3.850. Thereafter, Harvey filed a motion for postconviction relief in the trial court. After an evidentiary hearing on one of the claims, the trial judge entered an order denying relief. Harvey appealed the denial of his postconviction motion, raising seventeen claims, and he also filed a supplemental habeas petition raising seven issues. We denied the petition for writ of habeas corpus, but reversed the trial court's summary denial of the postconviction motion as to five issues and remanded to the trial court to determine if Harvey was denied effective assistance of counsel. Harvey v. Dugger, 656 So.2d 1253 (Fla.1995).[2] After an evidentiary hearing on these five issues, the trial court denied postconviction relief in an amended order.
Harvey now appeals the denial of postconviction relief, raising the following claims for review: (1) whether trial counsel was ineffective for failing to investigate and present evidence of mental mitigation; (2) whether trial counsel was ineffective for failing to adequately investigate and present mitigating evidence; (3) whether trial counsel was ineffective for admitting Harvey's guilt during opening statement; (4) whether trial counsel was ineffective for failing to make several arguments in support of his motion to suppress Harvey's confession;[3] and (5) whether the cumulative effect of trial counsel's other errors constituted ineffective assistance of counsel. For the reasons explained below, we affirm the trial court's denial of relief.

DISCUSSION

I. Ineffective Assistance of Counsel/Guilt Phase

A. Admission of Guilt
Harvey claims that trial counsel was ineffective for admitting guilt without his consent during the guilt phase opening statement. The trial court concluded that counsel's concession of guilt was not a concession of guilt to first-degree murder and thus was not improper. Harvey argues that trial counsel's statements to the jury were the functional equivalent of a guilty plea to both first-degree and second-degree murder, and that this concession of guilt, without Harvey's consent, constituted, per se, ineffective assistance of counsel.[4] *942 The State argues that the trial court properly denied relief because trial counsel did not concede guilt to the crime charged.
Crucial to this issue's resolution is a determination of the appropriate standard of review. We initially reviewed this issue under our earlier decision in Nixon v. Singletary, 758 So.2d 618 (Fla.2000), which relied on the per se rule of ineffective assistance of counsel discussed in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). However, the United States Supreme Court held in Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), that a defendant's claim of ineffective assistance of counsel based on counsel's concession of guilt to the crime charged, even without the defendant's consent, must be evaluated under the standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, in order to establish a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. As to the first or performance prong of Strickland, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland 466 U.S. at 687, 104 S.Ct. 2052. On the second or prejudice prong, the reviewing court must determine whether, there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See id. at 694, 104 S.Ct. 2052. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687, 104 S.Ct. 2052.
Trial counsel began his arguments to the jury by stating:
Harold Lee Harvey is guilty of murder. If anything is established over the next week it will be that Harold Lee Harvey is guilty of murder. I have been doing defense work for some time. I've never said that in a court of law, that my client is guilty of murder. But he is. That doesn't by any means end your consideration of his case. The physical act that he committed was that he pulled the trigger on what was an automatic military weapon firing it into a room, discharging projectiles that hit human beings and killed them.
Now, what events lead up to that? What events place this young man in that chair in this room before these 14 people to determine not whether or not he's a murderer but merely what type of murderer he is?
Based on these statements, the State argues that trial counsel's strategy was obvious: trial counsel was attempting, in the face of Harvey's confession, to argue that while Harvey did commit murder, it was second-degree murder because it was done without premeditation. However, the State's position is not supported by the record when viewed with trial counsel's entire opening statement. In describing the events leading up to the murder, trial counsel stated the following:
And then it happened just about the way that Mr. Morgan said it did. When they got there Mrs. Boyd surprised them. She was outside the house. She *943 was on her way out to get the garbage, they didn't have time to put their masks on. Mrs. Boyd came up to them, it was, I believe, shortly before nightfall, and asked them at the front door, "What are you doing out here?" And Stiteler looked at Lee and Lee looked at Stiteler and they knew that things were starting to go wrong.
And they had Mrs. Boyd walk back into the house and Mr. Boyd was in the house and they told them, "We want your money." And Stiteler ran around the house, all through the house looking for this cache of money, while Lee went into the bedroom with Mr. and Mrs. Boyd. Mr. and Mrs. Boyd then gave Lee what little bit they had, which was about $30 or $40 at the time. They didn't have any stash of money there. And Stiteler never did find the stash of money and they came down and completed the robbery. And little facts come out in cases that are always sometimes more indicative of what's really going on and is more indicative about the human beings involved than what the real plan was than other things. And the little fact in this case is Mr. Boyd asked for money for church, it was Saturday. And he said, "I have to go to church tomorrow, you're taking all my money." After all, he's thinking this is the neighbor kid. I know this kid, he lives over here. What's this crazy kid doing? And Lee gave him back money for church, because he didn't plan to kill him.
But then they went outside. And at that time Stiteler had the imposing weapon and Lee had the handgun. And at that point they began this frenzied conversation. They were just outside the home and the door was half open. They asked Mr. and Mrs. Boyd to sit down at a card table in the room, and you'll see pictures of the room.
And they had this conversation and without question what was discussed during this conversation was whether or not to kill these two people. This is a crazy conversation for these two young men to be having but that's what it had gotten to.
(Emphasis added.) The emphasized language clearly demonstrates that trial counsel admitted that Harvey deliberated his plan to kill the Boyds. By stating that Harvey and Stiteler had a conversation in which they discussed the plan to commit murder, trial counsel conceded that Harvey acted with premeditation and, therefore, conceded Harvey's guilt of first-degree murder.
However, because Harvey has failed to demonstrate prejudice based on counsel's concession of guilt, we need not address the deficiency prong of Strickland, and we deny 3.850 relief on this issue. See Strickland v. Washington, 466 U.S. at 697, 104 S.Ct. 2052 (holding there is no need for a court deciding an ineffective assistance of counsel claim to address both prongs of the inquiry if there as been an insufficient showing on one prong). In order to establish prejudice, a defendant must demonstrate that there is a reasonably probability that the result of the proceeding would have been different, but for counsel's unprofessional error. See Valle v. State, 778 So.2d 960, 965-66 (Fla.2001) (quoting Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).
Trial counsel testified that he was trying to fashion a defense around Harvey's confession, which he knew the jury would hear. Thus, counsel's strategy was to concede that Harvey committed second-degree murder and argue that he did not have the necessary intent for first-degree murder. The trial court's amended order *944 on Harvey's motion for postconviction relief provides the following facts: Harvey was arrested on two counts of second-degree murder and one count of robbery. He was immediately interviewed. The interview lasted throughout the morning and into the afternoon. It was during this interview that Harvey made a confession. Harvey never requested a lawyer. After his first appearance, counsel was appointed and Harvey was indicted on two counts of first-degree murder. At trial, Harvey's full confession was admitted into evidence. In the confession, Harvey told police that he and the codefendant went to the victims' house to rob them. They cut the power lines from the telephone pole. They went to the victims' door and were surprised when Mrs. Boyd approached them from outside the house and asked them if she could help them. They were not wearing masks. At that point, Harvey brandished a gun and took Mrs. Boyd inside the house and told her he wanted her money. Harvey told police that after they took the victims' money, they stood there talking about what they were going to do. They decided to kill the Boyds. Harvey said, "Well, they know me. What are we gonna do?" The codefendant said he did not know, and said, "I guess we're gonna have to kill'em, shoot'em." Harvey indicated the victims heard the conversation. He said the victims started to run, so he shot them. He further said that he then ran out of the door, and the codefendant was waiting for him in Harvey's car. Harvey went back in the house for the shell casings, and because Mrs. Boyd was still moaning, he shot her again in the head. He left, got in the car, and as he and the codefendant drove down the street, he realized that he had left the victims' wallets in the house and that he had touched them. They turned around and went back. Harvey went into the house and retrieved the wallets.
Trial counsel said nothing more to the jury than what Harvey said during his confession to police. The evidence against Harvey was overwhelming even without counsel's admission that Harvey committed first-degree murder. See, e.g., Patton v. State, 784 So.2d 380 (Fla.2000) (finding the facts counsel conceded were supported by overwhelming evidence and even if counsel had denied these facts, there was no reasonable possibility the jury would have rendered a different verdict). We cannot say, given all of the evidence introduced at trial, there is a reasonable probability that, but for any errors by counsel, the result of the proceeding would have been different, i.e., that our confidence in the outcome has been undermined.
Therefore, we affirm the trial court's denial of relief on this issue.

B. Motion to Suppress
Harvey next alleges that trial counsel was deficient in arguing the motion to suppress his confession made to police because counsel failed to introduce the police booking sheet pertaining to his arrest. Initially, the trial court summarily denied this claim. This Court reviewed the summary denial and remanded the issue for a hearing, stating that if the booking sheet was authentic, and if it was signed at 6:35 a.m., it "might bear on Harvey's claim of ineffective assistance of counsel in relation to the motion to suppress." Harvey v. Dugger, 656 So.2d at 1257.
On remand, the trial court conducted an evidentiary hearing and found that Harvey was arrested at 6:20 a.m. He arrived at the Okeechobee County jail at approximately 6:30 a.m. The booking officer only asked Harvey his name and noted a $3 million bond. Harvey was then immediately taken to an office and interviewed by Florida Department of Law Enforcement Officer Pete Lanier, Okeechobee County Chief *945 Deputy O.L. Raulerson, and Deputy Sheriff Gary Hargraves. At no time during the interview, which lasted through the afternoon, did Harvey ask for a lawyer. Prior to making his statements, Harvey signed five forms waiving his Miranda[5] rights, including the right to counsel.
Harvey made two incriminating statements during the course of the interview. The booking sheet was completed at approximately 5:50 p.m. Rose Bennett, a corrections officer, testified at the evidentiary hearing that she completed the booking sheet, including the portion of the booking sheet regarding Harvey's invocation of his right to counsel, prior to the first appearance hearing. She stated that she must have checked the box concerning a request for an attorney just before the hearing because the public defender was present then and had seen Harvey, and she included his name on the sheet. The first appearance hearing was held at 6:10 p.m. before County Judge Burton Connor. Harvey was then photographed and fingerprinted at approximately 7:15 p.m. Based upon these factual findings, the trial court concluded that the introduction of the booking sheet would not have been helpful because the booking sheet indicates that Harvey requested a lawyer after he made the incriminating statements.
Because the booking sheet was completed and the request for counsel was made after Harvey's confession, trial counsel was not deficient for failing to submit the booking sheet in support of the motion to suppress. This Court remanded this matter for an evidentiary hearing to determine if the booking sheet was signed at 6:35 a.m. It has been determined that the booking sheet was not signed at 6:35 a.m.; therefore, Harvey's claim that counsel was deficient has not been demonstrated.

II. Ineffective Assistance of Counsel/Penalty Phase
A. Failure to Investigate and Present Evidence of Mental Mitigation
Harvey claims his trial counsel was ineffective for failing to ensure that he received a competent mental health examination. Ineffective assistance of counsel claims are mixed questions of law and fact. This Court therefore conducts "an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings." State. v. Riechmann, 777 So.2d 342, 350 (Fla.2000); see also Cherry v. State, 781 So.2d 1040 (Fla.2000). The trial court's factual findings will be upheld when they are supported by competent, substantial evidence in the record. See Stephens v. State, 748 So.2d 1028, 1035 (Fla.1999).
Harvey alleges that trial counsel failed to fully investigate his background for mental health mitigation. The trial court found, however, that trial counsel retained psychologist Dr. Fred Petrilla, met and ate dinner with Harvey's parents and siblings on two occasions, and obtained Harvey's school records. The trial court also found that Dr. Petrilla interviewed Harvey's family and coworkers and that Dr. Petrilla was given background material concerning Harvey. These findings are supported by the record.
At the evidentiary hearing, trial counsel testified that he was concerned with Harvey's mental health and hired Dr. Petrilla for the purpose of conducting a mental health evaluation. Counsel indicated that he provided Dr. Petrilla with case materials and medical records. Counsel testified that neither Harvey nor Harvey's family gave him any indication of possible mental health mitigators, although they did inform counsel that Harvey had been in a serious *946 car accident when he was sixteen years old. Trial counsel said it was determined that Harvey had never been institutionalized. Dr. Petrilla testified at the evidentiary hearing that he performed a personality assessment and several other tests on Harvey. He also said he tested Harvey to determine his IQ. Dr. Petrilla further testified that he and trial counsel discussed the results of these tests. As a result of this testing, Dr. Petrilla recommended that Harvey be given antidepressant medications and receive psychotherapy with assertiveness training. He tested Harvey for organic brain damage, but he did not diagnose Harvey as having brain damage. Dr. Petrilla's testimony at the penalty phase of the trial was consistent with his investigation. He testified that Harvey was depressed, had low-self esteem, had a mental age of eighteen years and a physical age of twenty-three, did not have brain damage, and was impulsive.
Harvey argues that trial counsel was deficient because he did not retain a psychiatrist as Dr. Petrilla had recommended. As the trial court found, trial counsel and Dr. Petrilla conferred, and Dr. Petrilla recommended Dr. Carmen Ebalo as an examining psychiatrist for Harvey. Harvey argues that because his own psychologist recommended that he be evaluated by a psychiatrist, trial counsel was deficient in failing to retain one.
Although Dr. Petrilla suggested it, trial counsel testified at the evidentiary hearing that he did not employ a psychiatrist because he felt the jury might see calling more than one mental health expert as trying too hard to make an excuse for bad behavior, especially given the fact that Harvey had never been treated for mental illness. Based on the evidence available to trial counsel, including his interviews with Harvey's parents, trial counsel's decision was consistent with his sound trial strategy to present Harvey as a good person with a positive family upbringing. The evidence presented at the postconviction hearing painted Harvey in a different light and would have been inconsistent with the trial strategy that was employed.
While in hindsight counsel could have pursued a different penalty phase strategy, the strategy counsel employed was not unreasonable and did not fall outside the broad range of competent performance "under prevailing professional norms." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. In considering a claim of ineffective assistance of counsel, we must fairly assess trial counsel's performance at the time of trial based on the information he had. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.
In order to obtain a reversal of his death sentence on the ground of ineffective assistance of counsel, Harvey must show (1) that the identified acts or omissions of counsel were deficient or outside the wide range of professionally competent assistance, and (2) that the deficient performance prejudiced the defense such that, without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different. See Banks v. State, 842 So.2d 788, 790 (Fla.2003); Rose v. State, 675 So.2d 567, 571 (Fla.1996).
Harvey has not demonstrated that trial counsel was deficient in his investigation of possible mental health mitigation. This Court has found counsel's performance to be deficient where counsel "never attempted to meaningfully investigate mitigation" although substantial mitigation could have been presented. Rose, 675 So.2d at 572; *947 see also Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995) (finding that a woefully inadequate investigation failed to reveal a large amount of mitigating evidence such as prior psychiatric hospitalizations and statutory mental health mitigators); State v. Lara, 581 So.2d 1288, 1289 (Fla.1991) (finding counsel virtually ignored preparation for penalty phase). This is not the case here. Consistent with the trial court's factual findings, trial counsel conducted a reasonable investigation into Harvey's mental health background and incorporated his findings into a penalty phase strategy.
Trial counsel explained his strategy at the evidentiary hearing. He chose to present Harvey as a "good person." Trial counsel wanted the jury to see that these murders were inconsistent with Harvey's character and were committed without premeditation in the midst of a robbery gone wrong. Trial counsel testified that he thought about this strategy and decided to implement it after the motion to suppress Harvey's statement was denied. Trial counsel testified that he thought it was important to carry a consistent theme throughout both phases of the trial and believed this was Harvey's best chance for a life sentence. In cases where counsel did conduct a reasonable investigation of mental health mitigation and then made a strategic decision not to present this information, this Court has affirmed the trial court's finding that counsel's performance was not deficient. See Asay v. State, 769 So.2d 974, 985 (Fla.2000). We agree with the trial court and find that trial counsel's strategy was not unreasonable under the circumstances and did not fall outside the range of professional competent assistance.
B. Failure to Investigate and Present Other Mitigating Evidence
Harvey next argues that trial counsel was ineffective in failing to investigate and present the mitigating evidence of his personal background. We disagree because the record supports the trial court's findings and conclusion that counsel conducted a reasonable investigation and presented this evidence at the penalty phase proceeding. At the conclusion of the postconviction evidentiary hearing, the trial judge made the following findings in his order denying relief:
Mr. Watson met with Mr. Harvey's mother and father and siblings and ate dinner in their home on two occasions. He felt they were good, decent people. He also obtained Mr. Harvey's school records. He did not uncover any evidence that Harvey used or abused cocaine or marijuana or Quaaludes, that he drove an automobile drunk, or that his parents abused him. He determined that Harvey was involved in a very serious automobile accident at age 16 where he lost consciousness and a female companion was killed. He determined that Harvey had never been institutionalized.
. . . .
During the penalty phase the defendant presented 16 witnesses including Dr. Petrilla who testified that he had been a state's witness in earlier cases and that this was the first time he had testified in a death penalty case for a defendant.
The evidence including Dr. Petrilla's testimony showed that Harvey was depressed, had low self-esteem and a mental age of 18 and physical age of 23, did not have brain damage, and was impulsive. Evidence was also presented that he was hard-working, from a good, decent family who would be negatively effected [sic] if he would be executed, that he had been a loving brother to his disabled sister, that the crime was out of character, and that he was pressured by *948 his wife to provide things he could not financially do. Evidence showed that he was involved in the fatal accident at age 16 and would be able to adapt to a life sentence in prison.
Thus, it is evident that trial counsel presented much of the evidence that postconviction counsel has presented and that trial counsel presented the evidence that was uncovered during his investigation of this case.
As the trial judge found, sixteen witnesses testified on Harvey's behalf at the penalty phase proceeding concerning his background and history. These witnesses included Harvey's parents and siblings, who testified concerning Harvey's history and background. Other witnesses who testified included family friends, family members, an employer, a coworker, and several teachers. In sum, the witnesses stated that Harvey had a normal childhood, was a loving son, brother, and friend, was generally a good person, and came from a loving and hard-working family. The jury viewed several childhood photographs of Harvey with his siblings, as well as home movies of various family outings. This evidence is consistent with the general theme that the murders were out of character for Harvey.
At the evidentiary hearing, Harvey presented witnesses who painted a new and different picture of his background, including extreme poverty, physical abuse, substance abuse, and mental problems. The evidence Harvey now presents supports an entirely different theory for the penalty phase. However, speculation that another theory of defense would have been more successful is not sufficient to establish the deficiency prong of Strickland. In Strickland, the Supreme Court stated that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690, 104 S.Ct. 2052. See also Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (stating that "the deference owed such strategic judgments" under Strickland is defined "in terms of the adequacy of the investigations supporting those judgments"). The record clearly demonstrates that counsel conducted an adequate investigation into Harvey's background, and that counsel presented the evidence that was discovered during his investigation to argue for a sentence less than death.
We therefore find that counsel's performance was not deficient.

C. Other Alleged Penalty Phase Errors
Harvey next argues that trial counsel committed other penalty phase errors and that the cumulative effect of these errors warrants reversal. He claims that counsel failed to know the law relating to the mitigating factor of "no significant history of prior criminal activity," that counsel conceded several aggravating factors, that counsel failed to investigate potential aggravating and mitigating factors, that counsel encouraged the introduction of irrelevant and highly prejudicial testimony, that counsel permitted nonstatutory aggravating evidence of lack of remorse, and that counsel failed to present evidence on Harvey's behalf prior to sentencing.
Harvey claims that counsel should have waived the mitigating factor of lack of significant history of prior criminal activity because otherwise the State was allowed to present evidence of his escape from jail after his arrest on these charges. At the time of this trial, acts committed prior to sentencing and after the murder could be considered for purposes of sentencing. See Ruffin v. State, 397 So.2d 277, 283 (Fla.1981). In this case, the State was *949 permitted to introduce evidence of Harvey's escape. In fact, during the guilt phase of the trial, the State introduced evidence of the escape and the theft of a motor vehicle. Because this evidence had already been presented to the jury during the guilt phase, we agree with the trial court that counsel was not ineffective for failing to waive the mitigating factor of lack of significant criminal history.
Next, Harvey argues that trial counsel improperly attempted to distance himself from Harvey in arguments to the jury by expressing revulsion at what Harvey had done. The trial court reviewed the statements, and found that counsel's final argument was a "well-organized plea for mercy." This finding is supported by the record. Trial counsel argued that the killings were out of character for Harvey and emphasized that the killings occurred while Harvey was in a state of panic after the robberies were completed. Trial counsel also emphasized that there was no intent to kill at the time Harvey went to the Boyds' home. At the evidentiary hearing, trial counsel explained that his strategy for the closing penalty phase argument was to use the guilt phase to set the tone for the penalty phase and to maintain consistency between both phases. The comments upon which Harvey relies were clearly part of counsel's overall strategy to portray Harvey as a panicked young man who did not intend to commit murder. Trial counsel explained that given the jury's decision to convict, he could not tell them that the decision was unreasonable. Rather, counsel acknowledged the verdict and then made a plea that Harvey was deserving of mercy.
Harvey relies heavily on Clark v. State, 690 So.2d 1280 (Fla.1997), in support of this claim. In Clark, this Court held that trial counsel failed to function reasonably as an effective counsel when he indicated his own doubts or distaste for the case and when he attacked the defendant's character and emphasized the seriousness of the crime. Id. at 1283. Furthermore, in Clark, trial counsel "virtually encouraged the jury to impose the death penalty, [and] he assisted the prosecution in making its case." Id. In the case now before us, trial counsel did not encourage the jury to impose the death penalty, but instead maintained a consistent theme, pleading for mercy and a life sentence. Trial counsel's performance was not deficient.
Harvey also argues that trial counsel's failure to investigate potential aggravating and mitigating factors constituted ineffective assistance of counsel. He argues that counsel failed to investigate evidence concerning the heinous, atrocious, or cruel aggravating factor. Harvey bases this claim on the sentencing court's finding that that the victims had, in fact, heard conversations between Harvey and his codefendant about disposing of the witnesses. Harvey argues that trial counsel should have challenged this evidence because the television was loud and one of the victims was hard of hearing. However, as the trial court found, the evidence that the victims began to run and the defendant's own statement support the conclusion that the victims heard the conversation that took place between Harvey and the codefendant wherein they discussed killing the victims. Ineffective assistance of counsel has not been demonstrated.
Harvey also asserts that trial counsel should have pursued the theory that he was substantially dominated by the codefendant. The trial court found that counsel had requested a jury instruction on substantial domination and the request was denied. Counsel then decided not to argue that Harvey was under substantial domination by another because the evidence *950 did not support this theory. Harvey was older than his codefendant, they went to the crime scene in Harvey's car, Harvey was married with marital pressures, and Harvey was the shooter and took the automatic weapon from his codefendant's hands immediately before shooting the victims. These findings are supported by the record. Trial counsel was not deficient for failing to argue the mitigating factor of substantial domination.
Harvey next claims trial counsel encouraged the introduction of irrelevant and highly prejudicial testimony. A guard at the Okeechobee County jail was allowed to testify concerning a statement made by Harvey to another inmate to the effect that he had killed twice, had nothing to lose, and would kill again. The trial judge ruled that only the first part of the statement was admissible. However, defense counsel asked the trial judge to admit the entire statement. Defense counsel wanted to put the entire statement into context by explaining the circumstances under which it was made. Counsel questioned the officer about the statement and demonstrated that the other inmate initiated an altercation with Harvey. Counsel's examination showed that Harvey had ignored the other inmate for one-half hour before the statement was made. Under these circumstances, we cannot say that counsel's strategy in handling this matter amounted to ineffective assistance of counsel.
Next, Harvey asserts that trial counsel permitted the admission of nonstatutory aggravating evidence of lack of remorse in violation of Randolph v. State, 562 So.2d 331 (Fla.1990). The record reflects that the defense relied on remorse as a mitigating factor during the penalty phase and the State attempted to rebut this factor. Even though the defense argued remorse as a mitigating factor, defense counsel nonetheless objected to the State presenting any evidence on lack of remorse. Counsel's objection to the State's evidence on lack of remorse was overruled. Thus, Harvey has failed to demonstrate ineffective assistance of counsel.
Finally, Harvey argues that trial counsel was ineffective because the sentencing occurred two hours after the jury returned its advisory verdict, and trial counsel only said, "We know of no legal cause of non-sentencing." Harvey argues that counsel was ineffective because he called no witnesses and made no argument for a life sentence. However, Harvey does not allege any new information that counsel could have presented at this stage. Thus, this claim is insufficiently pled, and Harvey has failed to demonstrate that trial counsel's performance was deficient.
Because Harvey has failed to show that any of the alleged errors demonstrate both the deficiency and prejudice prongs of the test set forth in Strickland, there are no errors to consider cumulatively. As the trial court found, "[T]he overall and specific effects of Mr. Watson's efforts were effective assistance of counsel." We affirm the trial court's order. See Downs v. State, 740 So.2d 506, 509 (Fla.1999) (holding that where allegations of individual error are without merit, a cumulative error argument based thereupon must also fail).

CONCLUSION
For the reasons set forth above, we affirm the trial court's denial of postconviction relief.
It is so ordered.
WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
*951 ANSTEAD, J., concurs in part and dissents in part with an opinion, in which PARIENTE, C.J., concurs.
ANSTEAD, J., concurring in part and dissenting in part.
While I concur in the majority opinion in many respects, including its decision to grant rehearing on the Nixon issue, I cannot concur in the majority's ultimate conclusion that the defendant is not entitled to a new penalty phase proceeding. It is apparent that trial counsel's conduct was deficient in numerous respects and that there was no genuine adversarial testing of the appropriate penalty to be imposed in this case.
First, as to the Nixon issue, it is apparent from the postconviction proceedings that counsel's conduct was deficient. In fact, counsel gave detailed testimony that his strategy was to demonstrate that the defendant was guilty at most of second-degree murder, a crime to which the death penalty does not apply. He testified that he probably told the defendant of this second-degree murder strategy and that it was this theory that he outlined in his opening statement. However, as detailed in the majority opinion, defense counsel did not outline a second-degree murder case in his opening statement. Rather, as the majority explains, defense counsel conceded the defendant's guilt to premeditated murder, i.e., first-degree capital murder. Unfortunately, this strategy of conceding guilt to two senseless killings permeated counsel's performance. Counsel's summations to the jury in the guilt and penalty phases simply demonstrated his inability to do much more than show his frustration at having to defend the case.
Second, counsel's frustration may have been understandable if he had done a thorough job of investigating the defendant's life for evidence of mitigation. However, he was content with a superficial investigation. For example, while counsel did consult with a psychologist, someone without a medical degree or license to practice medicine, he then proceeded to ignore the psychologist's pointed and repeated advice that a medically trained and licensed psychiatrist be consulted. Of course, we now know because of the unrebutted evidence presented at the postconviction evidentiary hearing that had the psychiatrist been consulted, numerous and serious mental problems, including organic brain damage, would have been detected. In addition, the causes for these serious mental problems growing out of the defendant's deprived and abusive childhood, and at least two major traumatic events, could have been properly developed and presented to the judge and jury, including evidence of several important statutory mitigators and extensive nonstatutory mitigation. But, due to counsel's blatant neglect in heeding the psychologist's advice, none of this powerful mitigating evidence was ever investigated, developed, or presented. As our death penalty jurisprudence makes clear, counsel's duty is to thoroughly investigate first, and then evaluate in order to develop a sound defense strategy. We have a clear breach of counsel's duty here and substantial prejudice as a result. In the face of an almost apologetic case for mitigation, the jury's recommendation for death was virtually a certainty.
Finally, after the jury returned its recommendation of death, counsel essentially abandoned his client. Defense counsel presented absolutely no case for life to the true sentencer, the trial judge, and of course, the trial judge simply followed the jury's recommendation. Because it is the trial court that does the actual sentencing, it is essential that counsel not abandon his client and that counsel be prepared to *952 make a case for life to the trial court. That did not happen here.
I would hold that we cannot have confidence in the outcome of proceedings so infected by trial counsel's neglect and ineffectiveness. While counsel's neglect may ultimately have made no difference in the establishment of his guilt, the record in this case clearly establishes that the adversarial testing mandated by Strickland did not take place in the penalty phase proceedings of this case. We should remand for a new penalty phase, so that this essential adversarial testing can take place before a reasoned and informed judgment is rendered on life or death.
PARIENTE, C.J., concurs.
NOTES
[1] The murders were found to be (1) especially heinous, atrocious, or cruel; (2) committed for the purpose of avoiding lawful arrest; (3) committed in a cold, calculated, and premeditated manner; and (4) committed during the commission of or the attempt to commit robbery or burglary. Id. at 1087 n. 4, 104 S.Ct. 2052.
[2] This Court affirmed the denial of Harvey's remaining rule 3.850 claims. See Harvey v. Dugger, 656 So.2d 1253 (Fla.1995).
[3] In Harvey v. Dugger, 656 So.2d at 1256, we found the remainder of this claim to be procedurally barred, with the exception of the portion of the claim relating to the booking sheet, because the issue of the suppression of Harvey's confession was raised on direct appeal and rejected by this Court.
[4] Florida Rule of Criminal Procedure 3.171(c)(1) provides:

Defense counsel shall not conclude any plea agreement on behalf of a defendant-client without the client's full and complete consent thereto, being certain that any decision to plead guilty or nolo contendere is made by the defendant.
[5] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).