# Supreme Court of Florida

_____

No. SC2024-0648

_____

**HAROLD LEE HARVEY, JR.,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 18, 2026

PER CURIAM.

Harold Lee Harvey, Jr. appeals the summary denial of his third successive motion for postconviction relief. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.; *see also State v. Fourth Dist. Ct. of Appeal*, 697 So. 2d 70, 71 (Fla. 1997) (holding "that in addition to our appellate jurisdiction over sentences of death, we have exclusive jurisdiction to review all types of collateral proceedings in death penalty cases"). Because all of Harvey's arguments are either procedurally barred or meritless, we affirm the postconviction court's summary denial of Harvey's motion for

postconviction relief.

I

In 1986, a jury convicted Harvey of two counts of first-degree murder. *Harvey v. State* (*Harvey I*), 529 So. 2d 1083, 1084 (Fla. 1988).[1] The jury returned a recommendation of death by an 11-1 vote. The court sentenced Harvey to death on both counts after finding four aggravating factors.[2] The trial court found that the mitigating circumstances did not outweigh the aggravating factors and specifically rejected as mitigation Harvey's mental age being eighteen years and nine months. We affirmed Harvey's convictions and sentences on direct appeal. *Id.* at 1088. Harvey then unsuccessfully challenged his convictions and sentences in both state and federal courts. *Harvey v. Duggar* (*Harvey II*), 656 So. 2d 1253, 1254-58 (Fla. 1995); *Harvey v. State* (*Harvey IV*), 946 So. 2d 937, 940 (Fla. 2006) (affirming denial of Harvey's initial

---

1. We previously discussed the facts of Harvey's crimes more fully in *Harvey I*, 529 So. 2d at 1084.

2. These factors were that the murders (1) were committed during a robbery or burglary, (2) were committed for the purpose of avoiding lawful arrest, (3) were committed in a cold, calculated, and premeditated manner, and (4) were especially heinous, atrocious, and cruel. *Id.* at 1087 & n.4.

postconviction motion); *Harvey v. State* (*Harvey V*), 260 So. 3d 906, 907 (Fla. 2018) (affirming trial court's denial of Harvey's first successive rule 3.851 motion that raised an intellectual disability claim); *Harvey v. State* (*Harvey VI*), 318 So. 3d 1238, 1240 (Fla. 2021) (affirming postconviction court's summary denial of Harvey's second successive rule 3.851 motion); *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1263 (11th Cir. 2011) (affirming district court's denial of Harvey's petition for federal habeas corpus relief).

Most recently, Harvey filed his third successive rule 3.851 motion, claiming that he is entitled to a new trial or new penalty phase based on newly discovered evidence. Harvey claimed that new evidence demonstrates the human brain is not fully developed by eighteen years of age and continues to develop into an individual's twenties. He claims that, although he was twenty-two years old at the time of the murders, his brain was not fully developed, and he had the maturity of less than a nineteen-year-old, thereby rendering his convictions suspect and ineligible for the death penalty. In support, Harvey cited a new "scientific consensus" by the American Psychological Association (APA), the American Psychiatric Association, and the American Association on

Intellectual and Developmental Disabilities supporting his claim about brain development continuing into the twenties. The consensus was a 2022 resolution by the APA that called on courts and state and federal legislative bodies to ban the death penalty in cases in which the defendant is younger than twenty-one. Harvey also raised a claim of cumulative error, claiming that the "newly discovered evidence" compounds the other errors in his case.

With his motion, Harvey also submitted reports by two neuroscientists that examined Harvey's case—but did not physically examine Harvey—against this "new scientific consensus." Neither expert references the APA resolution. The first report, by Dr. Leah Somerville, provided a summary of the brain and behavioral development during adolescence and young adulthood. In her report, Dr. Somerville acknowledged that she had not met with or evaluated Harvey. The report did not "express any opinion on Mr. Harvey's specific trajectory of brain development, behavior, or circumstances surrounding the alleged crimes." She concluded that Harvey's state of brain development was likely still maturing at the time of the crime and "may have been further compromised by adverse experiences and brain injury" during his youth. Dr. James

Merikangas authored the second report. In it he opined that, based upon a review of the trial court records, Harvey's brain was still developing.[3] Dr. Merikangas concluded that Harvey was "essentially an adolescent."

The postconviction court held a case management conference and thereafter denied Harvey's motion. In doing so, the court adopted the State's argument and reasoning. The court determined that Harvey did not meet his burden to overcome the timeliness and procedural bars to his newly discovered evidence claim. Second, the court found that his claim was meritless, as neither this Court nor the U.S. Supreme Court has held that people over the age of eighteen (other than the intellectually disabled) are ineligible for the death penalty nor expanded the bar to include "mental ages" under eighteen. The court also found that because Harvey's individual claims were meritless, the claim of cumulative error also failed. The court then denied Harvey's motion for rehearing in April 2024. This timely appeal follows.

_____

3. Dr. Merikangas also did not evaluate Harvey, but he recommended further testing.

II

When a postconviction court denies a successive rule 3.851 motion without an evidentiary hearing, this Court reviews the decision de novo. *Pardo v. State*, 108 So. 3d 558, 561 (Fla. 2012); *see also Gaskin v. State*, 218 So. 3d 399, 400 (Fla. 2017).

A

First, Harvey claims the postconviction court erred by adopting the State's reasoning and argument in the final order. As he puts it, the postconviction court "incorporated by reference the State's answer and adopted the State's reasoning" in denying Harvey relief.

A court may adopt a party's written argument in denying postconviction relief. *Pietri v. State*, 885 So. 2d 245, 269-70 (Fla. 2004) (finding no error in a capital case where a postconviction court issued an order and stated the State's post-evidentiary hearing memorandum was "incorporated by reference"); *see also Patton v. State*, 784 So. 2d 380, 388-91 (Fla. 2000) (finding no error where the trial court "chose to adopt the State's arguments as an accurate and well-documented reflection of the facts and law pertaining to the issues" (citing *Anderson v. Bessemer City*, 460

U.S. 564, 572 (1985))); *Groover v. State*, 640 So. 2d 1077, 1078-79 (Fla. 1994) (finding no due process violation where the trial court adopted the State's proposed order denying a defendant relief on his Florida Rule of Criminal Procedure 3.850 motion).

Here, the trial court incorporated some of the State's facts and argument in writing its order. Like *Pietri*, the court did not simply sign a proposed order written by the State. 885 So. 2d at 269-70. Instead, the judge authored her own two-page order that "incorporated by reference" the State's answer reasoning and hearing argument. The court then explained why Harvey's motion for postconviction relief failed. There is no authority prohibiting the postconviction court from doing so. It was therefore not error for the postconviction court to incorporate the State's answer reasoning and hearing argument in its order denying Harvey relief.

B

Next, Harvey claims that the postconviction court did not apply the required standard when it summarily denied his motion. Under *Pardo*, a postconviction court should hold an evidentiary hearing on a rule 3.851 motion "whenever the movant makes a facially sufficient claim that requires a factual determination."

*Pardo*, 108 So. 3d at 560 (citation omitted).

Rule 3.851 sets up the pleading requirements for both initial and successive postconviction motions. Fla. R. Crim. P. 3.851(e)(1)-(2). When a defendant seeks postconviction relief for the first time, a court must grant an evidentiary hearing unless the movant's claims are "legally insufficient, should have been brought on direct appeal, or are positively refuted by the record." *Pardo*, 108 So. 3d at 561 (citation omitted). For a claim of newly discovered evidence to be facially sufficient, it must meet the two-part test established in *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998). *See also Rodgers v. State*, 288 So. 3d 1038, 1039-40 (Fla. 2019); *Bogle v. State*, 288 So. 3d 1065, 1068-69 (Fla. 2019).

The standard for an evidentiary hearing in a successive motion for postconviction relief is generally consistent with the standard for an initial motion. *See Rogers v. State*, 327 So. 3d 784, 786-87 (Fla. 2021) (applying the *Pardo* standard to a third successive motion for postconviction relief). But there are other considerations for successive motions, such as the requirement that the postconviction court hold a case management conference to decide whether an evidentiary hearing is necessary. Fla. R. Crim. P.

3.851(f)(5)(B). Also, for a successive rule 3.851 motion, "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief, the motion may be denied without an evidentiary hearing." *Id.* On the other hand, for an initial rule 3.851 motion, a postconviction court cannot look beyond the filings. *Seibert v. State*, 64 So. 3d 67, 75 (Fla. 2010). Thus, for successive motions, postconviction courts have more latitude to reject claims.

In this case, the postconviction court did not err in focusing its analysis on timeliness. When a claim of newly discovered evidence is brought as a successive claim, the defendant must show an exception to the time limitation in Florida Rule of Criminal Procedure 3.851(d)(1). *See Howell v. State*, 145 So. 3d 774, 775 (Fla. 2013). This rule requires that "[a]ny motion to vacate judgment of conviction and sentence of death must be filed by the defendant within 1 year after the judgment and sentence become final." Fla. R. Crim. P. 3.851(d)(1). Because Harvey's sentences became final in 1989, his successive postconviction claim falls outside the one-year time limitation, and he was required to show: (1) newly discovered evidence; (2) a new constitutional right held to apply retroactively; or (3) counsel's neglect to file a motion. *See* Fla.

R. Crim. P. 3.851(d)(2) (precluding consideration of an untimely motion); *Kight v. State*, 784 So. 2d 396, 400 (Fla. 2001). Because of that standard, the postconviction court correctly evaluated whether to hold an evidentiary hearing.

III

Harvey next argues that he is entitled to an evidentiary hearing based on his newly discovered evidence claim, but again, we find no error. As we have already discussed, with certain exceptions, a defendant must generally file a rule 3.851 motion for postconviction relief within one year of the judgment and sentence becoming final. *See* Fla. R. Crim P. 3.851(d)(1). For Harvey to overcome the time bar, he must show that at the time of trial any "newly discovered evidence" was "unknown by the trial court, by the party, or by counsel . . . and it could not have been discovered through due diligence, and . . . that the evidence is of such a nature that it would probably . . . yield a less severe sentence on retrial." *Dillbeck v. State*, 357 So. 3d 94, 100 (Fla. 2023) (third omission in original) (quoting *Dailey v. State*, 329 So. 3d 1280, 1285 (Fla. 2021)); *see also Jones*, 709 So. 2d at 521 (establishing the two-part test to set aside a conviction based on newly discovered evidence).

In addition, an intellectual disability claim based on newly discovered evidence "must be filed 'within one year of the date upon which the claim became discoverable through due diligence.' " *Dillbeck*, 357 So. 3d at 99 (quoting *Pittman v. State*, 337 So. 3d 776, 777 (Fla. 2022)).

Harvey argues that he can overcome the procedural bar because the evidence upon which his claim is based could not have been known at the appropriate time through the exercise of due diligence. *Jimenez v. State*, 997 So. 2d 1056, 1063 (Fla. 2008) (citing Fla. R. Crim. P. 3.851(d)(2)). But as the postconviction court concluded, Harvey "failed to meet his burden to overcome the untimeliness and procedural bar."

To the extent that Harvey challenges the trial court's decision not to consider his "mental age" as a mitigating circumstance, that is an issue that he should have raised on direct appeal. *Muhammad v. State*, 603 So. 2d 488, 489 (Fla. 1992) (noting "[i]ssues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack"). To the extent that Harvey challenges his death sentences based on his IQ, that claim is also procedurally barred as having been

previously raised.[4] *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (holding that a postconviction court should reject a claim for postconviction relief when it is not distinguishable from issues raised in previous motions); *see also Barwick v. State*, 361 So. 3d 785, 795 (Fla. 2023) (rejecting a postconviction claim because it was "a variation of claims that were raised in prior proceedings"). Even were it a new claim though, it would still be procedurally barred. *Zack v. State*, 371 So. 3d 335, 347 (Fla. 2023) (citing *Barwick*, 361 So. 3d at 795); *see also Branch v. State*, 236 So. 3d 981, 986 (Fla. 2018) (holding that an extension-of-*Roper* claim was procedurally barred in an active warrant case because it could have been raised previously); *Simmons v. State*, 105 So. 3d 475, 511 (Fla. 2012) (rejecting as procedurally barred a claim, based on *Roper* and *Atkins*, that the defendant was exempt from execution based on mental illness and neuropsychological deficits because it could have been raised in prior proceedings).

---

4. In his first successive motion for postconviction relief, Harvey raised the claim that his death sentence was prohibited because he was "intellectually disabled." The postconviction court rejected Harvey's claim because his IQ was 86 and therefore within the normal range.

Likewise, Harvey's introduction of the August 2022 APA Resolution and the 2023 reports of Dr. Somerville and Dr. Merikangas to his case do not help him overcome the procedural bar.[5] "This Court has routinely held that resolutions, consensus opinions, articles, research, and the like, do not constitute newly discovered evidence." *Barwick*, 361 So. 3d at 793 (citing *Foster v. State*, 258 So. 3d 1248, 1253 (Fla. 2018); *Branch*, 236 So. 3d at 984-87; *Schwab v. State*, 969 So. 2d 318, 325 (Fla. 2007); *Rutherford v. State*, 940 So. 2d 1112, 1117 (Fla. 2006)). For example, in *Barwick* we concluded that the same resolution upon which Harvey relies did not constitute newly discovered evidence because it was based on "a compilation of studies, research, data, and reports, published between 1992 and 2022 and relying on data from as early as 1977." *Id.* Our conclusion in *Barwick* applies equally here. *See also Melton v. State*, 367 So. 3d 1175, 1177 (Fla. 2023) (holding that a declaration from a neurodevelopmental

_____

5. Since the APA Resolution was published in August 2022, Harvey's time to file a claim based on newly discovered evidence expired in August 2023. *See Dillbeck*, 357 So. 3d at 99. Therefore, his claim cannot be based solely on the APA Resolution. It must be based on the 2023 reports of Dr. Somerville and Dr. Merikangas.

psychologist that the human brain does not fully develop until late adolescence is not "newly discovered evidence"); *Zack*, 371 So. 3d at 346-47 (concluding that "new scientific consensus" is not newly discovered evidence and the claim was procedurally barred).

As for the reports by Dr. Somerville and Dr. Merikangas, they do not distinguish Harvey's case from *Barwick*, and they do not change this Court's analysis. This Court has held that "new opinions" or "new research studies" are not newly discovered evidence. *Schwab*, 969 So. 2d at 325 (citing *Diaz v. State*, 945 So. 2d 1136, 1144 (Fla. 2006)); *see also Booker v. State*, 413 So. 2d 756, 757 (Fla. 1982) (concluding that "newly discovered evidence" cannot be a "new interpretation of facts that were known and considered at trial"). Here, Dr. Somerville and Dr. Merikangas did not provide any new information about Harvey's mental state at the time of the crime. Neither Dr. Somerville nor Dr. Merikangas visited Harvey. In her report, Dr. Somerville concluded that based on her own research, Harvey's brain was likely still maturing at the time of the crime. Dr. Merikangas concluded that Harvey "did not have the normal brain of a 22-year-old" and recommended further testing. These reports are not newly discovered evidence. *See Asay v. State*,

210 So. 3d 1, 23 (Fla. 2016) ("Merely obtaining a new expert to review the same records does not create newly discovered evidence." (citing *Howell v. State*, 145 So. 3d 774, 775 (Fla. 2013))).

For all the above reasons, Harvey has not demonstrated that the postconviction court erred in rejecting his claim.

IV

Finally, Harvey argues that the cumulative effect of the "newly discovered evidence" undermines the validity of his death sentences. Harvey argues that the newly discovered evidence of his "diminished capacity due to his underdeveloped and damaged brain, impaired intellectual functioning, and mental illnesses . . . undercut[s] every aspect of his case." As explained above, Harvey's underlying claims have no merit. Therefore, the postconviction court also properly denied his claim of cumulative error. *Griffin v. State*, 866 So. 2d 1, 22 (Fla. 2003) ("[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail." (citing *Downs v. State*, 740 So. 2d 506, 509 n.5 (Fla. 1999))).

Beyond a standard cumulative error claim, Harvey argues that "[t]he failure to appreciate the extent of [his] mental condition

resulted in cumulative errors [at trial]." He raises issues related to whether (1) the waiver of his rights under *Miranda* was knowing and voluntary, (2) his confession was voluntary, (3) he was incompetent to assist with his defense and whether his counsel's decision to concede guilt was ineffective, (4) he lacked the mens rea to commit first-degree murder, (5) rejection of the age and mental health mitigation was proper, and (6) the trial court properly evaluated and weighed sentencing factors. As the State argues, this claim is "impermissibly attempting to bootstrap untimely, procedurally barred, and non-cognizable claims with evidence that has been deemed not to qualify as 'newly discovered.'"

The State is correct that all these claims were either denied previously or are procedurally barred. On direct appeal, Harvey argued that the court should suppress his confession because law enforcement did not tell him that a public defender was present at the police station to talk with him. *Harvey I*, 529 So. 2d at 1085. Harvey also raised variations of several of these claims in his initial postconviction motion, where he argued that his trial counsel was ineffective for (1) failing to investigate and present evidence of mental mitigation, (2) failing to adequately investigate and present

mitigating evidence, (3) admitting Harvey's guilt during opening statement, and (4) failing to make several arguments in support of his motion to suppress Harvey's confession. *Harvey III*, 946 So. 2d at 941.

The other issues—including Harvey's waiver of his *Miranda* rights, whether Harvey had the requisite mens rea, the rejection of the age and mental health mitigation, and the weighing of sentencing factors—all should have been raised on direct appeal. *Muhammad*, 603 So. 2d at 489 ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990) ("[I]t is inappropriate to use a different argument to relitigate the same issue." (citation omitted)). Further, cumulative trial error itself is an issue for direct appeal. *Occhicone v. State*, 768 So. 2d 1037, 1040 n.3 (Fla. 2000) (finding a defendant must raise a cumulative impact claim on direct appeal and is procedurally barred in a collateral case (citing *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1323-24 (Fla. 1994))). Therefore, the postconviction court did not err in rejecting Harvey's cumulative error argument.

V

For the reasons above, we affirm the summary denial of Harvey's successive motion for postconviction relief.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, GROSSHANS, FRANCIS, SASSO, and TANENBAUM, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Okeechobee County,
    Laurie E. Buchanan, Judge
    Case No. 471985CF000075CFAXMX

Ross B. Bricker of Jenner & Block LLP, Chicago, Illinois,

    for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, and Leslie T. Campbell, Senior Assistant Attorney General, West Palm Beach, Florida,

    for Appellee