# Supreme Court of Florida

_____

No. SC18-190
_____

**ERIC SCOTT BRANCH,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC18-218
_____

**ERIC SCOTT BRANCH,**
Petitioner,

vs.

**JULIE L. JONES, etc.,**
Respondent.

[February 15, 2018]

PER CURIAM.

Eric Scott Branch, a prisoner under sentence of death with an active death

warrant, appeals a circuit court order summarily denying his second successive

motion for postconviction relief filed pursuant to Florida Rule of Criminal

Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the following reasons, we affirm the circuit court's denial of the motion and deny the habeas petition.

## FACTS AND RELEVANT PROCEDURAL HISTORY

Branch was convicted of first-degree murder, sexual battery, and grand theft in connection with the killing of Susan Morris. *Branch v. State* (*Branch I*), 685 So. 2d 1250 (Fla. 1996), *cert. denied*, 520 U.S. 1218 (1997). We described the facts of the murder on direct appeal as follows:

> Eric Branch was wanted by police in Indiana and because the car he was driving, a Pontiac, could be traced to him, he decided to steal a car from the campus of the University of West Florida [(UWF)] in Pensacola. When Susan Morris, a young college student, approached her car after attending an evening class [on] January 11, 1993, Branch accosted her and stole her red Toyota. Morris's nude body was found later in nearby woods; she had been beaten, stomped, sexually assaulted and strangled. She bore numerous bruises and lacerations, both eyes were swollen shut, and a wooden stick was broken off in her vagina.

*Id.* at 1251-52. The jury recommended a sentence of death by a vote of ten to two, and the trial court followed that recommendation. *Id.* at 1252. The trial court found the existence of three aggravating factors[1] and four mitigating

---

1. The murder was committed during a sexual battery; Branch had been convicted of a prior violent felony in the State of Indiana; and the murder was especially heinous, atrocious, or cruel. *Branch I*, 685 So. 2d at 1252 n.1.

circumstances.[2] *Id.* at 1252. On direct appeal, we affirmed Branch's convictions and sentences. *Id.* at 1253. In 2006, we affirmed the circuit court's denial of Branch's initial motion for postconviction relief and denied his initial petition for writ of habeas corpus. *Branch v. State* (*Branch II*), 952 So. 2d 470, 473 (Fla. 2006).

Branch subsequently filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Florida. *Branch v. McDonough* (*Branch III*), 779 F. Supp. 2d 1309 (N.D. Fla. 2010). The federal district court denied the petition, but issued a limited certificate of appealability. *Id.* at 1330. The United States Court of Appeals for the Eleventh Circuit affirmed the judgment denying federal habeas corpus relief. *Branch v. Sec'y, Fla. Dep't of Corr.* (*Branch IV*), 638 F.3d 1353, 1356 (11th Cir. 2011).

In 2016, we affirmed the circuit court's denial of Branch's motion for postconviction DNA testing filed pursuant to Florida Rule of Criminal Procedure 3.853 and section 925.11, Florida Statutes (2015). *Branch v. State* (*Branch V*), No. SC15-1869, 2016 WL 4182823 (Fla. Aug. 8, 2016). On January 22, 2018, we affirmed the circuit court's denial of Branch's first successive motion for

_____

2. Branch had an unstable childhood; Branch possessed positive personality traits; Branch behaved acceptably during trial; and Branch was remorseful. *Id.* at n.2.

- 3 -

postconviction relief. *Branch v. State* (*Branch VI*), No. SC17-1509, 2018 WL 495024 (Fla. Jan. 22, 2018).

On January 19, 2018, Governor Rick Scott signed a death warrant for Branch and scheduled his execution for February 22, 2018. On January 29, 2018, Branch filed his second successive motion for postconviction relief, raising two claims. First, Branch contended that because he was twenty-one years old at the time of the murder,[3] executing him would violate the Eighth Amendment to the United States Constitution based upon *Roper v. Simmons*, 543 U.S. 551 (2005). In *Roper*, the United States Supreme Court held that executing individuals who were under the age of eighteen at the time of their crimes is prohibited by the Eighth and Fourteenth Amendments. *Id.* at 578-79. Branch asserted (1) there is an emerging consensus in the medical community that the brain continues to develop through the mid-twenties, such that young adults are cognitively comparable to juveniles, and this consensus constitutes newly discovered evidence; (2) a national consensus has developed that individuals who were in their late teens and early twenties at the time of their crimes should not be executed; and (3) the criminal laws of other states and international law generally reflect that offenders who were in their late teens and early twenties at the time of their crimes are treated differently than older

_____

3. Branch turned twenty-two less than one month after the murder.

- 4 -

offenders. Branch additionally contended that the physical, emotional, and sexual trauma he suffered during his childhood and young adulthood, coupled with substance abuse, further impaired and delayed his brain development. Branch's second claim was that the length of time he has spent on death row constitutes cruel and unusual punishment under the Eighth Amendment.

On February 1, 2018, the circuit court denied Branch's motion without an evidentiary hearing and denied Branch's application for stay of execution. This appeal follows. Branch also filed with this Court a motion for stay of execution and a successive petition for writ of habeas corpus, challenging the prior violent felony aggravating factor found by the trial court.

## ANALYSIS

### Public Records Requests

Branch first challenges the circuit court's denial of his requests for public records pursuant to Florida Rule of Criminal Procedure 3.852. We have explained:

> [The] denial of public records requests are reviewed under the abuse of discretion standard. *See Dennis v. State*, 109 So. 3d 680, 698 (Fla. 2012); *Diaz v. State*, 945 So. 2d 1136, 1149 (Fla. 2006). "Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." *State v. Coney*, 845 So. 2d 120, 137 (Fla. 2003) (quoting *White v. State*, 817 So. 2d 799, 806 (2002)). The Court has long acknowledged that the public records procedure under Florida Rule of Criminal Procedure 3.852 "is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief." *Valle* [*v. State*, 70 So. 3d 530, 549

- 5 -

(Fla. 2011)] (quoting *Moore v. State*, 820 So. 2d 199, 204 (Fla. 2002) (quoting *Glock v. Moore*, 776 So. 2d 243, 253 (Fla. 2001))).

*Muhammad v. State*, 132 So. 3d 176, 200 (Fla. 2013). A defendant "bears the burden of demonstrating that the records sought relate to a colorable claim for postconviction relief." *Chavez v. State*, 132 So. 3d 826, 829 (Fla. 2014) (citing *Mann v. State*, 112 So. 3d 1158, 1163 (Fla. 2013)).

Branch initially sought extensive records from multiple entities, but later narrowed the requests to records relating to the expiration dates of the drugs the Florida Department of Corrections (DOC) plans to use during his execution and records relating to the autopsy of Patrick Charles Hannon, the last inmate to be executed under Florida's current lethal injection protocol. We have previously held that these types of requests are unlikely to lead to a colorable claim for postconviction relief. *See, e.g.*, *Hannon v. State*, 228 So. 3d 505, 511 (Fla. 2017); *Chavez*, 132 So. 3d at 830; *Muhammad*, 132 So. 3d at 203, 206. Specifically, with respect to Branch's assertion that the DOC's supply of execution drugs may be expired, this Court has stated that it will presume "the DOC will act in accordance with its protocol and carry out its duties properly. This same presumption would extend to presume that *the DOC will obtain viable versions of the drugs it intends to use and confirm before use that the drugs are still viable, as the protocol*

- 6 -

*requires*." *Muhammad*, 132 So. 3d at 206 (emphasis added) (citation omitted).[4]

Similarly, we have explained that autopsy records are not likely to lead to a colorable claim because they "would not establish when the inmates became unconscious or whether they experienced pain during their executions." *Chavez*, 132 So. 3d at 830. Therefore, the circuit court did not abuse its discretion when it denied these requests, and we reject this claim.

**Eligibility for the Death Penalty**

Branch next contends that the circuit court erred when it summarily denied his claim that he is ineligible for the death penalty. However, the Supreme Court in *Roper* designated eighteen as the critical age for determining death eligibility, stating:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. *The qualities that distinguish juveniles from adults do not disappear when an individual turns 18.* By the same token, some under 18 have already attained a level of maturity some adults will never reach. . . . [H]owever, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. *It is, we conclude, the age at which the line for death eligibility ought to rest.*

---

4. The current DOC lethal injection protocol provides that "[a] designated execution team member will purchase, and at all times ensure a sufficient supply of, the chemicals to be used in the lethal injection process. *The designated team member will ensure that the lethal chemicals have not reached or surpassed their expiration dates.*" Fla. Dep't of Corr., *Execution by Lethal Injection Procedures* 4 (2017), http://www.dc.state.fl.us/oth/deathrow/lethal-injection-procedures-as-of_01-04-17.pdf (emphasis added).

543 U.S. at 574 (emphasis added). Branch argues for an expansion of *Roper* on the basis that newly discovered evidence—in the form of scientific research with respect to development of the human brain, as well as the evolution of state and international law—mandates that individuals who committed murder in their late teens and early twenties be treated like juveniles.[5] The circuit court properly denied this claim without an evidentiary hearing.

First, this issue is procedurally barred. The trial court's order sentencing Branch to death found that Branch's age was not a mitigating circumstance:

> The defendant was twenty-one years of age at the time of this offense. There was testimony from the defendant's brother and grandfather that he was not particularly mature for his age, and that he frequently requested the assistance of relatives, primarily his grandfather, in making important decisions. The defendant did not, however, appear to be mentally deficient in any way. He assisted his counsel throughout trial, and testified at trial with great specificity and detail. The defendant's age at the time of the crime is not a mitigating factor.

---

5. Branch further relies upon American Bar Association Resolution 111 which "urges each jurisdiction that imposes capital punishment to prohibit the imposition of a death sentence on or execution of any individual who was 21 years old or younger at the time of the offense." ABA House of Delegates Resolution 111 (adopted Feb. 5, 2018), https://www.americanbar.org/content/dam/aba/images/abanews/mym2018res/111.pdf. The resolution is based on the same considerations as those presented by Branch in these proceedings. *See, e.g.*, A.B.A. Death Penalty Due Process Rev. Project & Sec. Civ. Rts. & Soc. Just., *Report to the House of Delegates* 3 (2018) ("The newly-understood similarities between juvenile and late adolescent brains, as well as the evolution of death penalty law and relevant standards under the Eighth Amendment lead to the clear conclusion that individuals in late adolescence should be exempted from capital punishment.").

On direct appeal, Branch did not challenge the trial court's rejection of age as a mitigating circumstance. Furthermore, the Supreme Court decided *Roper* on March 1, 2005. Branch filed the habeas petition in *Branch II* on August 31, 2005, and he did not assert that he was ineligible for execution pursuant to *Roper*. Accordingly, this claim is waived as it could have been raised previously.

Second, we have rejected similar claims on the basis that scientific research with respect to brain development does not qualify as newly discovered evidence. For example, in *Morton v. State*, 995 So. 2d 233, 245 (Fla. 2008), the defendant claimed that a 2004 brain mapping study established that sections of the human brain are not fully developed until the age of twenty-five. He argued this constituted newly discovered evidence which required a reweighing of his age— nineteen-and-a-half years old at the time of the murder—as a mitigating circumstance. *Id.* In rejecting this claim, we stated:

> We have previously rejected recognizing "new research studies" as
> newly discovered evidence if based on previously available data. *See*
> *Schwab* [*v. State*, 969 So. 2d 318, 325 (Fla. 2007)] (citing *Diaz v.
> State*, 945 So. 2d 1136, 1144 (Fla. 2006) (concluding doctor's letter
> addressing lethal injection research was not newly discovered
> evidence because conclusions in letter were based on old data)).
> Although this 2004 brain mapping study had not yet been published at
> the time of Morton's trials, Morton or his counsel could have
> discovered similar research at that time that stated that the human
> brain was not fully developed until early adulthood. *See* Jay D.
> Aronson, *Brain Imaging, Culpability and the Juvenile Death Penalty*,
> 13 Psychol. Pub. Pol'y & L. 115, 120 (2007) ("In the past few
> decades . . . neuroscientists have discovered that two key
> developmental processes, myelination . . . and pruning of neural

connections, continue to take place during adolescence and well into adulthood . . . . [B]rain regions responsible for basic life processes and sensory perception tend to mature fastest, whereas the regions responsible for behavioral inhibition and control, risk assessment, decision making, and emotion maturing take longer (Yakovlev & Lecours, 1967).”). Therefore, the 2004 study would not constitute newly discovered evidence and the trial court correctly denied this claim without an evidentiary hearing.

*Id.* at 245-46 (some alterations in original). We further rejected on the merits

Morton’s claim that he was entitled to relief pursuant to *Roper*:

*Roper* has no application here where the facts are undisputed that Morton’s chronological age was above nineteen at the time he committed the crimes. Because it is impossible for Morton to demonstrate that he falls within the ages of exemption, his claim is facially insufficient and it was proper for the court to deny Morton a hearing on this claim.

*Id.* at 245.

Similarly, in *Davis v. State*, 142 So. 3d 867 (Fla. 2014), the defendant—who was under an active death warrant—contended that he was not eligible for the death penalty because, despite his chronological age of twenty-five at the time of the murder, he was the “functional equivalent of a child.” *Id.* at 870. The defendant relied upon “allegedly newly discovered evidence regarding the effects of alcoholism and sexual abuse on brain development in children, and . . . *Roper*.” *Id.* at 874. This Court concluded that the evidence presented by the defendant was not newly discovered and, even if it was, the claim would still fail on the merits:

The studies cited by Davis, addressing the effects of alcoholism and sexual abuse on brain development, do not constitute newly

- 10 -

discovered evidence. This Court has previously stated that it "has not recognized 'new opinions' or 'new research studies' as newly discovered evidence." *Schwab v. State*, 969 So. 2d 318, 325 (Fla. 2007). The articles that Davis relies upon fall squarely within this subject area and therefore do not constitute newly discovered evidence. *See Farina v. State*, 992 So. 2d 819 (Fla. 2008) (table decision) (holding that a "study on brain mapping is not newly discovered evidence"); *Schwab*, 969 So. 2d at 325 (concluding that "two recent scientific articles regarding brain anatomy and sexual offense" did not constitute newly discovered evidence).

Further, as explained above, even if these recently published articles were considered newly discovered evidence, Davis still fails to put forth a cognizable claim. The United States Supreme Court's decision in *Roper* prohibits the execution of those individuals "who were under the age of 18 when their crimes were committed." 543 U.S. at 578, 125 S. Ct. 1183. In interpreting the Supreme Court's decision, this Court has previously stated that "*Roper* only prohibits the execution of those defendants whose *chronological* age is below eighteen." *Hill* [*v. State*, 921 So. 2d 579, 584 (Fla. 2006)]. Therefore, because Davis was over the age of eighteen when he committed murder, *Roper* does not apply, and his claim is without merit.

*Id.* at 875-76.

Finally, the United States Supreme Court has continued to identify eighteen as the critical age for purposes of Eighth Amendment jurisprudence. *See Miller v. Alabama*, 567 U.S. 460, 465 (2012) (prohibiting mandatory sentences of life without parole for homicide offenders who committed their crimes before the age of eighteen); *Graham v. Florida*, 560 U.S. 48, 74-75 (2010) (prohibiting sentences of life without parole for nonhomicide offenders who committed their crimes before the age of eighteen). Therefore, unless the United States Supreme Court

determines that the age of ineligibility for the death penalty should be extended, we will continue to adhere to *Roper*.

Accordingly, Branch is eligible for execution because he was not under the age of eighteen at the time he murdered Morris, and the circuit court properly denied this claim without an evidentiary hearing.

**Length of Time on Death Row**

Next, Branch contends that the length of time he has spent on death row—almost twenty-four years—amounts to cruel and unusual punishment under the Eighth Amendment.  We rejected a similar claim in *Correll v. State*, 184 So. 3d 478 (Fla. 2015), where the inmate had been on death row for over twenty-nine years:

> [T]his Court has repeatedly rejected such challenges.  *See, e.g.*, *Pardo v. State*, 108 So. 3d 558, 569 (Fla. 2012) (twenty-four years); *Johnston v. State*, 27 So. 3d 11, 27 (Fla. 2010) (almost twenty-five years); *Tompkins v. State*, 994 So. 2d 1072, 1085 (Fla. 2008) (twenty-three years); *Booker v. State*, 969 So. 2d 186, 200 (Fla. 2007) (almost thirty years).  Further, executions of inmates who have been on death row as long as, or longer than, Correll have been permitted.  *See, e.g.*, *Ferguson v. State*, 101 So. 3d 362, 366 (Fla. 2012) (more than thirty years); *Waterhouse v. State*, 82 So. 3d 84, 87 (Fla. 2012) (more than thirty-one years); *Valle v. State*, 70 So. 3d 530, 552 (Fla. 2011) (thirty-three years).

*Id.* at 486.  We decline to recede from our longstanding precedent, and we affirm the denial of this claim.

- 12 -

**PETITION FOR WRIT OF HABEAS CORPUS**

Branch has repeatedly challenged the validity of the prior violent felony

aggravating factor, which was based upon his Indiana conviction for the crime of

sexual battery. In his habeas petition, Branch again challenges this aggravating

factor. In brief, he argues that his Indiana conviction for sexual battery was not a

violent felony under Florida law, the trial court should not have instructed the jury

that sexual battery is a crime of violence, and the trial court improperly relied on

the Indiana conviction to establish the prior violent felony aggravating factor.

These claims should have been or were raised on direct appeal and are, therefore,

procedurally barred. *See Breedlove v. Singletary*, 595 So. 2d 8, 10 (Fla. 1992)

("Habeas corpus is not a second appeal and cannot be used to litigate or relitigate

issues which could have been, should have been, or were raised on direct appeal.");

*see also id.* ("Using different grounds to reargue the same issue is also improper.").

Moreover, we concluded in *Branch II* that even if the Indiana conviction did

not qualify as a prior violent felony, any error was harmless:

> Here, the trial court found two other significant aggravators: the
> murder was committed in the course of a sexual battery and was
> especially heinous, atrocious, or cruel. The trial court determined that
> the mitigating evidence was marginal. Moreover, contrary to
> Branch's assertions, the mitigating evidence presented at the
> evidentiary hearing adds little more to what was previously presented.

952 So. 2d at 482. We have previously stated that the heinous, atrocious, or cruel

aggravating factor is "qualitatively among the weightiest aggravating

circumstances." *Kaczmar v. State*, 228 So. 3d 1, 15 (Fla. 2017).  With respect to

this aggravating factor, the trial court found:

> The victim in this case was attacked in a parking lot at [UWF] following an evening class.  She was carried or dragged from the parking lot to a remote wooded area.  Her clothes were removed and she was both beaten and strangled, in addition to being sexually battered.  She sustained multiple bruises and abrasions of the face and head.  There were also abrasions and contusions corresponding to the sock which was tied around her neck.  Injuries to the internal portions of her neck include fractures of the larynx and hyoid bone.  The medical examiner stated that these internal injuries were commonly seen either from a manual compression of the neck or from an injury in which the assailant stamps on the victim's neck with his foot while the victim, in a supine position, has her head and face against a firm surface such as the earth.  The medical examiner testified that the victim had injuries to her forearms and hands which were characterized as defensive in nature.  He testified that such injuries are commonly seen in victims who are receiving a beating, and who attempt to ward off the blows by raising their hands and arms up to the face.  The medical examiner testified he could not be certain whether death was caused by the multiple blows to the head or by strangulation. . . .  The medical examiner testified that out of more than three thousand autopsies which he has performed, this one will stand out in his mind as a result of the brutality of the injuries.
> . . . .
> . . . [I]t is clear that the injuries inflicted on the victim which led to her death were committed with the intent to inflict extreme pain.

Because Branch's habeas claims are both procedurally barred and without merit,

he is not entitled to relief.

## CONCLUSION

Based on the foregoing, we affirm the circuit court's denial of Branch's

second successive postconviction motion and deny his successive petition for writ

of habeas corpus.  Because Branch is not entitled to relief, we deny his motion for stay of execution.  No oral argument is necessary, and no rehearing will be entertained by this Court.  The mandate shall issue immediately.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.

An Appeal from the Circuit Court in and for Escambia County,
        Edward P. Nickinson, III, Judge - Case No. 171993CF000870XXXAXX
And an Original Proceeding – Habeas Corpus

Robert S. Friedman, Capital Collateral Regional Counsel, Stacy Biggart and Kathleen Pafford, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida; Billy H. Nolas, Chief, and Kimberly Sharkey, Attorney, Capital Habeas Unit, Office of the Federal Public Defender, Northern District of Florida, Tallahassee, Florida,

        for Appellant/Petitioner

Pamela Jo Bondi, Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, and Lisa A. Hopkins, Assistant Attorney General, Tallahassee, Florida,

        for Appellee/Respondent