# Supreme Court of Florida

————————

No. SC18-860

————————

**KEVIN DON FOSTER,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

December 6, 2018
**CORRECTED OPINION**

PER CURIAM.

Kevin Don Foster, a prisoner under sentence of death, appeals a circuit court order denying his successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the denial of relief.

## FACTS AND PROCEDURAL BACKGROUND

Foster, leader of the "Lords of Chaos," was convicted in Lee County of first-degree murder and sentenced to death for the 1996 murder of Riverdale High School band director Mark Schwebes. *See Foster v. State*, 778 So. 2d 906, 909

(Fla. 2000).  The facts, which are fully set forth in the opinion on direct appeal, are summarized as follows.

In April 1996, Foster and two other teenagers formed the "Lords of Chaos," a gang which was intended "to create disorder in the Fort Myers community through a host of criminal acts."  *Id.* at 909.  The membership grew to include others, including several who were involved in the murder of Schwebes or the events immediately preceding his death.  *Id.*

On April 30, 1996, the group decided to vandalize Riverdale High and set the school's auditorium on fire.  *Id.* at 910.  Foster and two others (Christopher Black and Thomas Torrone) entered the school and stole various items, including a fire extinguisher that they intended to use to break the auditorium windows.  *Id.* Several others stood watch outside.  *Id.*

However, the group was interrupted by Schwebes, who came to the school auditorium after leaving a nearby school function.  *Id.*  Foster ran when he saw Schwebes, leaving Black and Torrone behind.  *Id.*  Schwebes confronted Black and Torrone, retrieved the stolen items, and told them that he was going to report them to the campus police the following day.  *Id.*

Black and Torrone later rejoined Foster and the others and described their encounter with Schwebes.  *Id.*  Convinced that Schwebes would follow through on his promise to report them, Black stated that Schwebes "has got to die."  *Id.*  Foster

agreed, offering to kill Schwebes if Black could not bring himself to do it. *Id.* They discussed how to carry out the murder and ultimately agreed to go to Schwebes' house and kill him. *Id.* After calling 411 to get Schwebes' address and obtaining a map to find the location of the house, Foster and others traveled there, where Foster, armed with a shotgun, shot Schwebes in the face and pelvis. *Id.* The medical examiner testified that the shot to the face would have killed Schwebes instantly. *Id.*

The jury recommended death in a nine-to-three vote. *Id.* at 912. In imposing a sentence of death, the trial court found two aggravating factors: (1) the murder was committed for the purpose of avoiding or preventing a lawful arrest, and (2) the murder was cold, calculated, and premeditated without any pretense of moral or legal justification (CCP). *Id.* The trial court considered and rejected as a statutory mitigating circumstance that Foster was eighteen years old at the time of the murder, and it also did not find the existence of any of the nonstatutory mitigation presented by the defense. *Id.*

Foster appealed his conviction and sentence to this Court, both of which were affirmed and became final upon issuance of the mandate in 2001. *Id.* at 923. He timely filed his initial motion for postconviction relief in 2001, and he filed an amended motion in 2010. Following the trial court's summary denial of relief, he

appealed to this Court, which affirmed in 2013. *See Foster v. State*, 132 So. 3d 40, 76 (Fla. 2013).

In 2016, Foster filed a successive motion for postconviction relief in light of the United States Supreme Court's decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016) (*Hurst v. Florida*), and this Court's decision on remand, *Hurst v. State*, 202 So. 3d 40 (Fla. 2016) (*Hurst*). In *Hurst v. Florida*, the Supreme Court held that Florida's death penalty statute violated the Sixth Amendment to the United States Constitution to the extent that: (1) it required the judge, not the jury, to make the factual findings necessary to increase a defendant's maximum punishment for first-degree murder from life imprisonment to a death sentence, and (2) it deemed the jury's sentencing recommendation "advisory." 136 S. Ct. at 622. On remand, this Court held that "the Supreme Court's decision in *Hurst v. Florida* requires that all the critical findings necessary before the trial court may consider imposing a sentence of death must be found unanimously by the jury." 202 So. 3d at 44.

This Court further held that the Sixth and Eighth Amendments to the United States Constitution require that if the death penalty is to be imposed, the jury's recommendation of death must be unanimous. *Id.* However, *Hurst* did not resolve whether the decision would be applied retroactively. That issue was later decided in *Asay v. State*, 210 So. 3d 1 (Fla. 2016). In *Asay*, this Court held that *Hurst* did not apply retroactively and that relief was not available to defendants whose death

- 4 -

sentences became final before the United States Supreme Court issued its opinion in *Ring v. Arizona*, 536 U.S. 584 (2002).

Because Foster's conviction and sentence became final before the United States Supreme Court decided *Ring*, the trial court denied relief, and Foster appealed to this Court. *See Foster v. State*, 235 So. 3d 294, 295 (Fla. 2018). However, we stayed Foster's appeal pending our decision in *Hitchcock v. State*, 226 So. 3d 216 (Fla. 2018). We reiterated in *Hitchcock* that *Hurst* is not to be retroactively applied to cases where the defendant's death sentence became final before *Ring* was decided. *Id.* at 217. Subsequently, this Court issued an order requiring Foster to show cause why his appeal should not be governed by *Hitchcock*. Upon review, this Court held that *Hitchcock* was dispositive and affirmed the denial of relief. 235 So. 3d at 295.

Thereafter, Foster filed another successive motion for postconviction relief. In that motion, he raised two issues: (1) the jury did not find all of the elements required to convict him of what he terms "capital first-degree murder," and (2) Foster's age of eighteen years old at the time of the murder should preclude the imposition of the death penalty. The trial court summarily denied relief, and this appeal followed.

## ANALYSIS

### First-Degree Murder Claim

As we have previously held, because Foster's death sentence became final before the United States Supreme Court decided *Ring*, it is subject to the retroactivity holdings in *Asay* and *Hitchcock*. However, we write to address Foster's argument regarding the elements of "capital first-degree murder," and to explain why this argument has no merit.

Under Florida's revised capital sentencing statute, and consistent with *Hurst*, in order for a defendant to be sentenced to death, the jury must: (1) unanimously find at least one aggravating factor beyond a reasonable doubt; (2) identify all aggravating factors that it unanimously finds beyond a reasonable doubt; (3) unanimously determine whether sufficient aggravating factors exist to impose a sentence of death; (4) determine whether any mitigating circumstances exist and unanimously determine whether the aggravating factors outweigh those mitigating circumstances; and (5) unanimously determine that the defendant should be sentenced to death. *See Hurst*, 202 So. 3d at 57; § 921.141(2), Fla. Stat. (2018); ch. 2017-1, Laws of Fla. If the jury makes these findings, it only does so *after* a jury has unanimously convicted the defendant of the capital crime of first-degree murder that is delineated in section 782.04, Florida Statutes (2018).

*Hurst* reflected a change in this state's decisional law and, in *Asay*, we concluded "that *Hurst* should not be applied retroactively to [a] case, in which the death sentence became final before the issuance of *Ring*." 210 So. 3d at 22. However, Foster, whose sentence became final in 2001, asserts that a defendant who is convicted of first-degree murder has a substantive right to a life sentence unless a unanimous jury finds beyond a reasonable doubt all of the elements of "capital first-degree murder"—which Foster defines as "murder plus the . . . elements the jury is required to find unanimously under revised § 921.141, Fla. Stat." He argues that a conviction for "capital first-degree murder" requires not only the statutorily defined elements of first-degree murder, but the specific unanimous penalty phase findings set forth in *Hurst*; section 921.141, Florida Statutes, which was revised to incorporate the *Hurst* requirements; and chapter 2017-1, Laws of Florida, which amended section 921.141 to require that a jury's recommendation of death be unanimous. Foster asserts that he was not convicted of all of the elements of "capital first-degree murder" and that his due process and Eighth Amendment rights were violated as a result. We first turn to Foster's due process argument, and then we turn to his Eighth Amendment argument.

### Due Process

Long-recognized "[a]mong the attributes of due process is the requirement that the state must prove an accused guilty beyond a reasonable doubt." *State v.*

*Cohen*, 568 So. 2d 49, 51 (Fla. 1990). Proof beyond a reasonable doubt extends to every element of the crime, "every fact necessary to constitute the crime with which [the accused] is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

Before we proceed, we note that under Florida law, there is no crime expressly termed "capital first-degree murder." Florida law prohibits first-degree murder, which is, by definition, a capital crime. This distinction, while subtle, is essential, because contrary to Foster's argument, it is not the *Hurst* findings that establish first-degree murder as a capital crime for which the death penalty may be imposed. Rather, in Florida, first-degree murder is, by its very definition, a capital felony.

Florida's substantive statute on murder, codified at section 782.04, Florida Statutes, provides as follows:

> 782.04   Murder.—
> (1)(a)   The unlawful killing of a human being:
>
> 1.   When perpetrated from a premeditated design to effect the death of the person killed or any human being;
> 2.   When committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any: [enumerated felonies a.-s.] or
> 3.   Which resulted from the unlawful distribution by a person 18 years of age or older of any of the following substances, or mixture containing any of the following substances, when such substance or mixture is proven to be the proximate cause of the death of the user: [enumerated controlled substances a.-i.]
>
> *is murder in the first degree and constitutes a capital felony*, punishable as provided in s. 775.082.

(Emphasis added.)

Thus, the crime of first-degree murder, of which Foster was convicted, is defined in section 782.04 as a capital felony—this is regardless of whether the death penalty is ultimately imposed. Moreover, section 921.141(1), "Separate Proceedings on Issue of Penalty," begins as follows: "*Upon conviction or adjudication of guilt of a defendant of a capital felony*, the court shall conduct a separate proceeding to determine whether the defendant should be sentenced to death or life imprisonment as authorized by s. 775.082." (Emphasis added.) Further, Florida Rule of Criminal Procedure 3.112(b) defines a capital trial as "any first-degree murder case in which the State has not formally waived the death penalty on the record."

These statutes and the rule of procedure illustrate that the *Hurst* penalty phase findings are not elements of the capital felony of first-degree murder. Rather, they are findings required of a jury: (1) *before* the court can impose the death penalty for first-degree murder, and (2) *only after* a conviction or adjudication of guilt for first-degree murder has occurred. Thus, Foster's jury did find all of the elements necessary to convict him of the capital felony of first-degree murder—during the guilt phase.

In sum, a conviction for first-degree murder, a capital felony, solely consists of the jury having unanimously found the elements set forth in the substantive first-

degree murder statute and the relevant jury instruction. The conviction for first-degree murder must occur before and independently of the penalty-phase findings required by *Hurst* and its related legislative enactments. The Florida Statutes clearly establish the elements of first-degree murder required for a conviction, and *upon conviction*, the required findings in order to sentence a defendant to the death penalty. There is no, as Foster asserts, greater offense of "capital first-degree murder." Foster's guilt-phase jury considered all of the elements necessary to convict him of first-degree murder, a capital felony. Thus, his due process argument fails.

*Eighth Amendment*

We also reject Foster's argument that the failure to convict him of every element of "capital first-degree murder"—as he defines it—violates the Eighth Amendment. Moreover, as to the argument that his nonunanimous death sentence violates the Eighth Amendment, an identical claim was raised and rejected in *Hitchcock*. 226 So. 3d at 217 n.2. Foster is not entitled to relief.

***Roper* Claim**

Foster, who was eighteen years old at the time of the murder, argues that the trial court erred when it summarily denied his claim that his death sentence is unconstitutional. He encourages this Court to adopt a more expansive view than that in *Roper v. Simmons*, 543 U.S. 551, 577 (2005) (holding unconstitutional the

imposition of the death penalty upon individuals who were under the age of eighteen at the time the murder was committed).  In *Roper*, the Court said:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules.  The qualities that distinguish juveniles from adults do not disappear when an individual turns 18.  By the same token, some under 18 have already attained a level of maturity some adults will never reach.  For the reasons we have discussed, however, a line must be drawn. . . .  The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.  It is, we conclude, the age at which the line for death eligibility ought to rest.

*Id.* at 574.  Foster argues that newly discovered evidence reveals an emerging consensus in the scientific community that young adults are developmentally akin to juveniles, and he asks this Court to extend the protection in *Roper*.  For the reasons explained below, Foster is not entitled to relief.

In order to obtain relief on the basis of newly discovered evidence, "the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence."  *Marek v. State*, 14 So. 3d 985, 990 (Fla. 2009).  Additionally, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.  *Id.*

As newly discovered evidence, Foster cites articles from 2016, 2017, and earlier that focused on young adults ages eighteen to twenty-one and concluded that their cognitive development renders them more likely to engage in impulsive

and risky behavior such as criminal activity. He also highlights objective indicia of consensus, including a national trend against sentencing young adult offenders to death and against carrying out the execution of those already sentenced. Foster suggests that recent actions by state legislatures support the prohibition of death sentences for defendants who were age twenty-one and under at the time of their crimes, but he admits that no state has passed a law specifically geared toward that age group. Foster also cites a 2018 American Bar Association resolution which recommended that the death penalty be prohibited as to defendants twenty-one years of age and younger at the time of their crimes. In sum, Foster argues that evolving standards of decency render his death sentence invalid under the Eighth Amendment. As he acknowledges, however, this Court has rejected similar claims of newly discovered evidence—most recently in *Branch v. State*, 236 So. 3d 981 (Fla. 2018).

Eric Scott Branch, while under a death warrant, argued that his death sentence was unconstitutional because he was twenty-one years old at the time of the murder. *Id.* at 985. In a manner very similar to Foster, and citing some of the same research, Branch argued that newly discovered evidence demonstrates that young people in their late teens and early twenties lack the cognitive development that is necessary to be eligible for the death penalty. *Id.* This Court rejected Branch's argument on procedural grounds and also rejected the claim of newly

discovered evidence, saying: "[W]e have rejected similar claims on the basis that scientific research with respect to brain development does not qualify as newly discovered evidence." *Id.* at 986. Importantly, this Court also reaffirmed its adherence to the United States Supreme Court's holding in *Roper. Id.* at 987. This Court observed:

> Finally, the United States Supreme Court has continued to identify eighteen as the critical age for purposes of Eighth Amendment jurisprudence. *See Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (prohibiting mandatory sentences of life without parole for homicide offenders who committed their crimes before the age of eighteen); *Graham v. Florida*, 560 U.S. 48, 74-75, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (prohibiting sentences of life without parole for nonhomicide offenders who committed their crimes before the age of eighteen). Therefore, unless the United States Supreme Court determines that the age of ineligibility for the death penalty should be extended, we will continue to adhere to *Roper*.

*Branch*, 236 So. 3d at 987.

Foster attempts to distinguish his case from *Branch* because Branch was twenty-one years old while Foster was eighteen years old at the time of their respective crimes. In light of *Roper*, this distinction has no merit. As we did in *Branch*, we reaffirm our adherence to *Roper*. Foster is not entitled to relief.

## CONCLUSION

For these reasons, we affirm the circuit court's order denying Foster's successive motion for postconviction relief.

It is so ordered.

- 13 -

PARIENTE, LEWIS, QUINCE, and LABARGA, JJ., concur.
CANADY, C.J., and POLSTON and LAWSON, JJ., concur in result.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN SEVEN DAYS.  A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED WITHIN FIVE DAYS AFTER THE FILING OF THE MOTION FOR REHEARING/CLARIFICATION.  NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Lee County,
       Joseph Fuller, Jr., Judge - Case No.  361996CF001362000BCH

Neal Dupree, Capital Collateral Regional Counsel, and Scott Gavin, Assistant Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

       for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Stephen D. Ake, Senior Assistant Attorney General, Tampa, Florida,

       for Appellee