# Supreme Court of Florida

No. SC2022-0700

**JACK R. SLINEY,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

May 25, 2023

PER CURIAM.

Three decades ago, then-19-year-old Jack Sliney murdered George Blumberg during a robbery of Mr. Blumberg's pawn shop. Sliney's conviction and death sentence for the murder became final in 1998.[1] In January 2022, Sliney filed a second successive postconviction motion under Florida Rule of Criminal Procedure 3.851.[2] Sliney challenges the constitutionality of his death

---

1. *Sliney v. State*, 699 So. 2d 662, 672 (Fla. 1997), *cert. denied*, 522 U.S. 1129 (1998).

2. We previously denied Sliney's initial postconviction motion and first successive postconviction motion. *See Sliney v. State*, 944

sentence, arguing that the Eighth Amendment should be understood to categorically preclude the execution of offenders who were under age 22 at the time of their crimes. The trial court summarily denied Sliney's motion, Sliney appealed the ruling to this Court, and we now affirm.[3]

## I.

The decision in *Roper v. Simmons*, 543 U.S. 551 (2005), sets the baseline here. In *Roper*, the United States Supreme Court held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Id.* at 578. To get to that holding, the Court first conducted "a review of objective indicia of consensus, as expressed in particular by the enactments of legislatures that have addressed the question." *Id.* at 564. Then the Court applied its "own independent judgment" to conclude that "the death penalty

---

So. 2d 270, 289 (Fla. 2006); *Sliney v. State*, 235 So. 3d 310, 310 (Fla. 2018).

3. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

is disproportionate punishment for offenders under 18." *Id.* at 564, 575.

The Supreme Court identified three differences between juveniles and adults that, in the Court's view, "render suspect any conclusion that a juvenile falls among the worst offenders": juveniles' relative lack of maturity and underdeveloped sense of responsibility; their increased vulnerability to outside influences and peer pressure; and their incompletely formed character. *Id.* at 569-70. And given juveniles' "diminished culpability," the Court reasoned that "the penological justifications for the death penalty apply to them with lesser force than to adults." *Id.* at 571. The Court acknowledged that "[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Id.* at 574. But it concluded that "18 is the point where society draws the line for many purposes between childhood and adulthood," and that is "the age at which the line for death eligibility ought to rest." *Id.*

Sliney's second successive postconviction motion alleges that under the logic (if not the holding) of *Roper*, the Eighth Amendment should be understood to categorically prohibit the execution of any offender aged 18 through 21 at the time of his crime. Sliney

emphasizes that his motion does not seek reweighing of age as a mitigator in his case. Instead, Sliney claims to be a member of a class for whom the death penalty is categorically off limits.

Sliney's motion purports to raise two claims, each asserting a reason why his death sentence violates the Eighth Amendment— whether it would be more accurate to characterize the motion as raising a single Eighth Amendment claim is something we need not decide to resolve this appeal. The first claim invokes supposedly new scientific evidence about brain development to support the proposition that offenders aged 18 to 21, like juveniles, have diminished culpability. The alleged "newly discovered evidence" consists of the 2021 version of the Intellectual Disability Manual issued by the American Association of Intellectual and Developmental Disabilities (AAIDD). Sliney says that the manual raised the age of onset for diagnosing individual disability from 18 to 22. According to Sliney, the manual shows "a firm and conclusive recognition by the scientific community that there is no functional difference between the brain of an older adolescent and a juvenile offender." Sliney's second claim alleges that his death sentence is disproportionate punishment prohibited by the Eighth

Amendment. The basis for this claim is an alleged national consensus against the death penalty for individuals aged 18 through 21.

The trial court held a *Huff*[4] hearing to consider these arguments and to determine whether resolution of Sliney's motion would require an evidentiary hearing. The court then summarily denied Sliney's claims, concluding that the claims were untimely, procedurally barred, and substantively precluded by this Court's precedent. *See, e.g.*, *Branch v. State*, 236 So. 3d 981, 987 (Fla. 2018) ("[U]nless the United States Supreme Court determines that the age of ineligibility for the death penalty should be extended, we will continue to adhere to *Roper*."). This appeal followed.

## II.

Florida Rule of Criminal Procedure 3.851(f)(5)(B) authorizes the trial court to deny a successive postconviction motion without an evidentiary hearing if "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." Sliney argues that an evidentiary hearing was required in his case and

---

4. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

that the court below erred by summarily denying his motion. We disagree.

To sustain the trial court's ruling, we need only explain our agreement with the court's conclusion that Sliney's claims are untimely. The general rule is that a motion seeking relief under rule 3.851 must be filed "within 1 year after the judgment and sentence become final." Fla. R. Crim. P. 3.851(d)(1). An exception applies when "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence." Fla. R. Crim. P. 3.851(d)(2)(A). A motion traveling under this provision must be filed within one year of the date such facts become discoverable through due diligence. *Jimenez v. State*, 997 So. 2d 1056, 1064 (Fla. 2008).

Sliney filed his motion on January 14, 2022, decades after his death sentence became final. He argues that the motion is timely because he filed it within one year of the January 15, 2021, release of the updated AAIDD manual. Sliney urges us to conclude that the "new" evidence of the alleged scientific consensus reflected in the manual transcends long-available studies indicating that brain

development continues beyond age 18.  To be clear, Sliney relies on the publication of the 2021 AAIDD manual to justify the timeliness of both his "newly discovered evidence" claim and his "proportionality" claim, both of which are ultimately grounded in the Eighth Amendment.

We cannot agree that, for purposes of rule 3.851(d)(2)(A), the 2021 AAIDD manual contains previously unknown "facts on which [Sliney's claims are] predicated."  Similar facts have long been available to support the argument—successful or not—that young adults are like older juveniles in terms of brain development and, by extension, moral culpability.  Sliney's motion itself cites a February 5, 2018, American Bar Association resolution that, citing then-current brain research, says:  "These and other large-scale advances in the understanding of the human brain[] have led to the current medical recognition that brain systems and structures are still developing into an individual's mid-twenties."

Sliney's attempted reliance on the publication of the new AAIDD manual ignores the important distinction between the facts on which his claims are predicated and the evidence used to prove those facts.  *See generally Flanagan v. Johnson*, 154 F.3d 196, 199

(5th Cir. 1998) (explaining the difference). The updated AAIDD manual might provide additional support for Sliney's claims, but the scientific facts underlying those claims have been available since well before 2021. If we were to accept Sliney's timeliness argument, every new study or publication related to brain development in young adults could be invoked to restart the clock for filing a successive rule 3.851 motion. That would be at odds with the finality interests served by the rule.

Our analysis here does not break new ground. Other young adult offenders have relied on arguments like Sliney's as a gateway to escaping the time bar in rule 3.851 and arguing for an extension of *Roper*. In their cases, we similarly refused to treat materials like the 2021 AAIDD manual as "newly discovered evidence" in this context. *See, e.g.*, *Deviney v. State*, 322 So. 3d 563, 573 (Fla. 2021); *Branch*, 236 So. 3d at 985-87. Sliney's argument that the manual is qualitatively different—because it supposedly cements a scientific consensus—is unpersuasive. As a federal appeals court has observed, "[n]othing in *Roper* leads us to believe that the Justices drew the line at age eighteen based exclusively on their perception of a scientific certainty that an individual's brain and

- 8 -

cognitive functions undergo a metamorphosis at precisely that age."

*United States v. Gonzalez,* 981 F.3d 11, 20 (1st Cir. 2020).

### III.

For the reasons we have explained, we affirm the trial court's denial of Sliney's Eighth Amendment claims.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Charlotte County
     Donald Mason, Judge
Case No. 081992CF0004510001XX

Eric Pinkard, Capital Collateral Regional Counsel, Julissa Fontán, Assistant Capital Collateral Regional Counsel, and Nicholas M. Bedy, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Scott A. Browne, Chief Assistant Attorney General, Tampa, Florida,

    for Appellee