# Supreme Court of Florida

_____

No. SC2023-0531
_____

**DARRYL B. BARWICK,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

April 28, 2023

PER CURIAM.

Darryl B. Barwick, a prisoner under sentence of death for whom a warrant has been signed and an execution set for May 3, 2023, appeals the circuit court's orders summarily denying his second successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851; denying his motion for a stay of execution; and sustaining objections to his public records requests, which were made under rule 3.852.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.  For the reasons that follow, we affirm.

# I. BACKGROUND

On March 31, 1986, after observing the victim sunbathing at her Panama City apartment complex, Barwick returned to his home to retrieve a knife and walked back to the apartment complex. He followed the victim into her apartment, stabbed her thirty-seven times, wrapped her in a comforter, and left her body in the bathroom for her sister to find when she returned to their shared apartment that evening. Bloody fingerprints were found on the victim's purse and wallet, and her bathing suit had been displaced. Semen was found on the comforter wrapped around her body, and it was determined that Barwick was included within the two percent of the population who could have left the stain. Barwick was arrested and confessed to law enforcement and multiple family members. *Barwick v. State*, 660 So. 2d 685, 688-89 (Fla. 1995).

Barwick was indicted on charges of first-degree murder, armed burglary, attempted sexual battery, and armed robbery. He was initially found guilty as charged and subsequently sentenced to death for the murder in 1987, but the convictions and sentences

were vacated due to a *Neil* violation during jury selection.[1] *Id.* at 689. At his retrial in 1992, the jury again found Barwick guilty as charged and unanimously recommended a sentence of death. The trial court found that the following aggravators had been established beyond a reasonable doubt: (1) previous convictions for the violent felonies of sexual battery with force likely to cause death or great bodily harm and burglary of a dwelling with an assault; (2) the murder was committed during an attempted sexual battery; (3) the murder was committed to avoid arrest; (4) the murder was committed for pecuniary gain; (5) the murder was especially heinous, atrocious, or cruel; and (6) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral justification. The trial court found that each potential mitigator proposed by Barwick was either not established by the

---

1. Barwick had objected to the State's use of peremptory challenges to excuse three black jurors, and the trial court incorrectly believed that Barwick had no standing to make an objection under *State v. Neil*, 457 So. 2d 481 (Fla. 1984)—which prohibits the use of peremptory challenges on prospective jurors based solely on their race—due to the fact that both he and the victim were white. *See Barwick v. State*, 547 So. 2d 612, 612 (Fla. 1989).

evidence or was not a significant mitigating circumstance. The trial court followed the jury's recommendation of a sentence of death for the murder and also sentenced Barwick to life for armed burglary with a battery, thirty years for attempted sexual battery, and life for armed robbery. *Id.* at 689-90.

On appeal after retrial, this Court concluded that although the trial court erred in applying the cold, calculated, and premeditated aggravator, the error was harmless beyond a reasonable doubt, and Barwick's convictions and sentences were affirmed. *Id.* at 696-97. The convictions and sentences became final when the United States Supreme Court denied certiorari in 1996. *Barwick v. Florida*, 516 U.S. 1097 (1996).

In the decades since, Barwick has unsuccessfully challenged his convictions and sentences in state and federal court. *See Barwick v. State*, 88 So. 3d 85 (Fla. 2011) (affirming the denial of Barwick's initial motion for postconviction relief and denying his state habeas petition); *Barwick v. Crews*, 5:12cv00159-RH, 2014 WL 1057088 (N.D. Fla. Mar. 19, 2014) (denying Barwick's federal habeas petition); *Barwick v. Sec'y, Fla. Dept. of Corr.*, 794 F.3d 1239 (11th Cir. 2015) (affirming the denial of Barwick's federal habeas

petition); *Barwick v. State*, 237 So. 3d 927 (Fla. 2018) (affirming the denial of Barwick's first successive motion for postconviction relief).

Governor Ron DeSantis signed Barwick's death warrant on April 3, 2023. Barwick then filed a second successive motion for postconviction relief under rule 3.851, raising three claims: (1) the scheduling of Barwick's execution and warrant litigation violates his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution and deprives him of the effective assistance of postconviction counsel; (2) newly discovered evidence shows that the death penalty is a categorically unconstitutional punishment for individuals who were under age twenty-one when they committed their capital offenses; and (3) because of his severe neuropsychological disorder, lifelong cognitive impairments, and low mental age, executing Barwick would violate the Eighth and Fourteenth Amendments to the United States Constitution. The circuit court summarily denied all three claims, as well as Barwick's motion for a stay and certain requests for public records. This appeal followed.

## II. ANALYSIS

### A. Due Process, Effective Assistance of Postconviction Counsel, Stay of Execution, and Public Records

In his first issue on appeal, Barwick claims primarily that the compressed warrant litigation schedule resulted in the denial of his rights to due process and the effective assistance of postconviction counsel. He addresses these claims as a single issue, asserting that due process depends on the effective assistance of counsel, and that the accelerated warrant schedule and other attendant circumstances made it impossible for Barwick to be provided with effective assistance of postconviction counsel.

The circuit court summarily denied this consolidated claim, finding that Barwick was not denied due process because he did not allege that he was ever denied notice or an opportunity to be heard and that he was not denied effective assistance of postconviction counsel because he has no right to effective assistance of postconviction counsel. We agree that summary denial of this claim was proper.

Barwick has made it abundantly clear in his pleadings filed in both the circuit court and this Court that the post-warrant litigation

in this case has been very arduous for his counsel due to certain circumstances that happened to coincide with the beginning of the warrant period, such as the occurrence of Holy Week, Passover, and Ramadan; co-counsel being ill; and the presence of another inmate on Death Watch.[2]  Indeed, post-warrant litigation is arduous, even without such circumstances.  Yet none of the obstacles identified by Barwick resulted in a denial of due process.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Florida Constitution similarly provides that "[n]o person shall be deprived of life, liberty or property without due process of law."  Art. I, § 9, Fla. Const.  "Due process requires that a defendant be given notice and an opportunity to be heard on a matter before it is decided."  *Asay v. State*, 210 So. 3d 1, 27 (Fla. 2016) (citing *Huff v. State*, 622 So. 2d 982, 982 (Fla. 1993)).  But as the circuit court recognized in summarily denying this claim,

---

2.  "Death Watch" is a designated area of Florida State Prison where death row inmates under an active death warrant are housed.

Barwick has not identified any matter on which he was denied notice or an opportunity to be heard before it was decided. We have previously denied a due process claim raised in the death warrant context on this basis. *See id.* at 27-28 (rejecting due process claim where capital defendant under a death warrant failed to state when he was denied notice or an opportunity to be heard at any stage of his postconviction proceedings). Because Barwick has failed to state when he was denied notice or an opportunity to be heard, his due process claim fails.

Barwick also alleges that the thirty-day warrant period and the difficult attendant circumstances identified by Barwick made it impossible for postconviction counsel to provide effective assistance, thereby violating what he claims is his "statutory right to effective postconviction counsel." Under Florida law, individuals sentenced to death are entitled to the appointment of capital postconviction counsel for the purpose of pursuing any collateral attacks on their convictions and sentences. *See* § 27.702(1), Fla. Stat. (2022) ("The capital collateral regional counsel shall represent each person convicted and sentenced to death in this state for the sole purpose of instituting and prosecuting collateral actions

challenging the legality of the judgment and sentence imposed . . .

.").  Barwick argues that along with the entitlement to counsel,

section 27.711(12), Florida Statutes (2022), establishes a "statutory

right to effective postconviction counsel."

Section 27.711(12) provides:

> The court shall monitor the performance of assigned counsel to ensure that the capital defendant is receiving quality representation.  The court shall also receive and evaluate allegations that are made regarding the performance of assigned counsel.  The Justice Administrative Commission, the Department of Legal Affairs, or any interested person may advise the court of any circumstance that could affect the quality of representation, including, but not limited to, false or fraudulent billing, misconduct, failure to meet continuing legal education requirements, solicitation to receive compensation from the capital defendant, or failure to file appropriate motions in a timely manner.

§ 27.711(12), Fla. Stat.  But Barwick ignores other provisions within

chapter 27 that make it clear that the "quality representation"

referenced in section 27.711(12) does not create a right to effective

assistance of postconviction counsel.  Section 27.711(10) plainly

states that "[a]n action taken by an attorney who represents a

capital defendant in postconviction capital collateral proceedings

may not be the basis for a claim of ineffective assistance of

counsel."  § 27.711(10), Fla. Stat. (2022).  Section 27.7002(1) states

- 9 -

that capital defendants may not "challenge in any form or manner the adequacy of the collateral representation provided," and section 27.7002(2) provides that the "sole method of assuring adequacy of representation provided shall be in accordance with the provisions of s[ection] 27.711(12)," i.e., court monitoring. §§ 27.7002(1), (2), Fla. Stat. (2022). The fact that these provisions of chapter 27 expressly prohibit capital defendants from raising claims of ineffective assistance of postconviction counsel or otherwise challenging the adequacy of their postconviction representation forecloses any argument that section 27.711(12) creates a right to effective postconviction counsel.

Despite the plain language of these statutes, Barwick argues that this Court recognized the right to effective assistance of capital postconviction counsel when it stated in *Spalding v. Dugger*, 526 So. 2d 71, 72 (Fla. 1988), that "under section 27.702, each defendant under sentence of death is entitled, as a statutory right, to effective legal representation by the capital collateral representative in all collateral relief proceedings." But in *Asay*, we clarified that "*Spalding* only requires that a defendant be represented by an attorney during postconviction proceedings."

210 So. 3d at 28. And none of the cases cited by Barwick in support of what he claims to be *Spalding*'s "holding" compel a different conclusion.

We have also specifically held that "[u]nder Florida and federal law, a defendant has no constitutional right to effective collateral counsel." *Zack v. State*, 911 So. 2d 1190, 1203 (Fla. 2005). Further, the United States Supreme Court has "refused to extend a due process requirement for effective collateral counsel to situations where a state, like Florida, has opted to afford collateral counsel to indigent inmates." *Id.* (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)). Thus, a claim of ineffective assistance of postconviction counsel does not provide a valid basis for relief.

Within this first issue on appeal, Barwick also challenges the circuit court's denial of his motion for a stay of execution. We agree with the circuit court that Barwick did not establish any substantial grounds upon which relief might be granted if a stay had been ordered. As a result, his motion was properly denied. *See Dillbeck v. State*, 357 So. 3d 94, 103 (Fla.) (" '[A] stay of execution on a successive motion for postconviction relief is warranted only where there are substantial grounds upon which relief might be granted.'

- 11 -

") (quoting *Davis v. State*, 142 So. 3d 867, 873-74 (Fla. 2014)), *cert. denied*, 143 S. Ct. 856 (2023).

Finally, to the extent that Barwick has also raised a claim that the circuit court erred in denying his access to certain public records under rule 3.852(h)(3), it is insufficiently pleaded because he has not identified which updated records he was denied. Thus, Barwick is not entitled to relief regarding his public records requests. *See Heath v. State*, 3 So. 3d 1017, 1029 n.8 (Fla. 2009) ("Vague and conclusory allegations on appeal are insufficient to warrant relief.").

After consideration of each of the arguments raised in this issue, we find no error in the circuit court's summary denial of Claim 1 of Barwick's second successive motion for postconviction relief.

## B. Newly Discovered Evidence/Extension of *Roper*

In his second issue on appeal, Barwick argues that the circuit court erred in denying Claim 2 of his second successive postconviction motion, in which he argued that he is categorically exempt from execution because he was under the age of twenty-one when he committed his capital offense. Barwick asserts that

"[n]ewly discovered evidence of a definitive consensus regarding adolescent brain development demonstrates that the death penalty is a categorically unconstitutional punishment for individuals who committed their offenses when they were between the ages of 18 to 21."  At its core, this is a claim that *Roper v. Simmons*, 543 U.S. 551, 578 (2005)—which held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed"— should be extended to individuals who were under the age of twenty-one at the time their capital offenses were committed.

The "definitive consensus" to which Barwick refers is reflected in an August 2022 "resolution" from the American Psychological Association (APA).[3]  In short, the resolution states that "based upon the rationale of the *Roper* decision and currently available science, APA concludes the same prohibitions that have been applied to application of the penalty of death for persons who commit a serious crime at ages 17 and younger should apply to persons ages

---

3.  *APA RESOLUTION on the Imposition of Death as a Penalty for Persons Aged 18 Through 20, Also Known As the Late Adolescent Class*, American Psychological Association (August 2022), https://www.apa.org/about/policy/resolution-death-penalty.pdf.

18 through 20," because "there is no neuroscientific bright line regarding brain development that indicates the brains of 18- to 20-year-olds differ in any substantive way from those of 17-year-olds." The circuit court summarily denied this claim as procedurally barred, untimely, and without merit.

The circuit court was correct in concluding that this claim is procedurally barred because it is a variation of claims that were raised in prior proceedings. In Claim 22 of his initial postconviction proceedings, Barwick argued that because he suffers from brain damage and a mental and emotional age of less than eighteen years, his execution would offend the evolving standards of decency, serve no legitimate penological goal, and violate the Eighth and Fourteenth Amendments under *Roper*. He argued that his "neuropsychological impairments and his youth warrant consideration" and that he "lacks the requisite 'highly culpable mental state' " for capital punishment. In denying relief, the postconviction court recognized this claim as a *Roper*-extension claim and declined to "extend the holding in *Roper*."

Similarly, in Argument 1 of his petition for a writ of habeas corpus, filed in this Court in 2008, Barwick argued that due to his

- 14 -

brain damage, mental impairment, and mental and emotional age of less than eighteen years, his execution would offend the evolving standards of decency of a civilized society, serve no legitimate penological goal, and violate the Eighth and Fourteenth Amendments under *Roper*. He further argued that capital punishment should not be imposed where a defendant, like himself, lacks the requisite "highly culpable mental state." *See Barwick*, 88 So. 3d at 106 (rejecting habeas claim that because Barwick's mental age is less than eighteen due to brain damage and mental capacity, his execution is unconstitutional under *Roper*).

These initial postconviction and state habeas claims both asserted that although Barwick was nineteen when he committed the murder, *Roper*'s categorical ban on executing juveniles should be extended to him because he had a "mental and emotional age of less than eighteen years" at the time of the murder. The argument at the core of the instant claim is similarly that the mental and emotional age of eighteen- to twenty-year-olds cannot be distinguished reliably from that of sixteen- to seventeen-year-olds, and *Roper* should therefore extend to individuals who, like Barwick,

- 15 -

were eighteen to twenty years old when they committed their capital murders.

There is no doubt that Barwick is attempting to relitigate the same issue—that *Roper* should extend to him—that he has raised in two prior proceedings, now disguised as a claim of newly discovered evidence. Barwick acknowledges in his second successive motion that he previously "has raised the factual basis of [this] claim." Barwick is admittedly using "a different argument to relitigate the same issue," which is inappropriate. *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990). The circuit court was correct in denying this claim as procedurally barred because versions of it were raised in prior proceedings.

The circuit court also denied this claim as untimely because the APA resolution does not constitute newly discovered evidence such that it creates an exception to the one-year time limitation for filing postconviction claims. *See* Fla. R. Crim. P. 3.851(d)(1) (requiring that "[a]ny motion to vacate judgment of conviction and sentence of death shall be filed by the defendant within 1 year after the judgment and sentence become final"); Fla. R. Crim. P. 3.851(d)(2)(A) (creating an exception to the one-year time limitation

- 16 -

if "the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence").

The APA resolution appears to be the association's official or public stance that the death penalty should be banned in cases where the offender was under twenty-one years of age at the time of the capital offense. The resolution cites approximately fifty sources in support of this position, including articles published in psychology journals, law reviews, by universities, and by at least one of each of the following: a "nonprofit think tank," a "research and advocacy center," a federal agency, and a news outlet. It also cites reports, books, online registries, and meta-analyses. Thus, it is fair to say that the APA's resolution is based on a compilation of studies, research, data, and reports, published between 1992 and 2022 and relying on data from as early as 1977, and therefore does not constitute newly discovered evidence under rule 3.851(d)(2)(A).

This Court has routinely held that resolutions, consensus opinions, articles, research, and the like, do not constitute newly discovered evidence. *See, e.g.*, *Foster v. State*, 258 So. 3d 1248, 1253 (Fla. 2018) (rejecting as untimely an extension-of-*Roper* claim

- 17 -

relying on scientific research and a 2018 American Bar Association (ABA) resolution recommending individuals under twenty-two be exempt from execution, because they do not qualify as newly discovered evidence); *Branch v. State*, 236 So. 3d 981, 984-87 (Fla. 2018) (rejecting as untimely an extension-of-*Roper* claim that relied on new scientific research, scientific consensus, international consensus, and the 2018 ABA resolution, because they do not qualify as newly discovered evidence); *Schwab v. State*, 969 So. 2d 318, 325 (Fla. 2007) (holding that "new opinions" and "research studies" are not newly discovered evidence); *Rutherford v. State*, 940 So. 2d 1112, 1117 (Fla. 2006) (holding that a 2006 ABA report was not newly discovered evidence because it was "a compilation of previously available information"). Because the August 2022 APA resolution does not qualify as newly discovered evidence, this claim was properly summarily denied as untimely.

This claim is also without merit because this Court lacks the authority to extend *Roper*. The conformity clause of article I, section 17 of the Florida Constitution provides that "[t]he prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be

construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." This means that the Supreme Court's interpretation of the Eighth Amendment is both the floor and the ceiling for protection from cruel and unusual punishment in Florida, and this Court cannot interpret Florida's prohibition against cruel and unusual punishment to provide protection that the Supreme Court has decided is not afforded by the Eighth Amendment.

Because the Supreme Court has interpreted the Eighth Amendment to limit the exemption from execution to those whose chronological age was less than eighteen years at the time of their crimes, this Court is bound by that interpretation and is precluded from interpreting Florida's prohibition against cruel and unusual punishment to exempt individuals eighteen or more years old from execution on the basis of their age at the time of their crimes. This Court simply does not have the authority to extend *Roper* to Barwick based on his age of nineteen at the time of the murder. Accordingly, Barwick is not entitled to relief.

## C. Extension of *Atkins*

Barwick's final claim on appeal is that the circuit court erred in denying Claim 3 of his second successive postconviction motion, in which he argued that there is no meaningful distinction between his reduced moral culpability on account of his "trifecta of vulnerabilities"—severe neuropsychological disorder, immutable cognitive impairments, and low mental age at the time of the murder—and that of individuals with indistinguishable deficits due to intellectual disability, and therefore his execution, like that of an intellectually disabled person or a juvenile, would violate the Eighth and Fourteenth Amendments. In short, Barwick asserts that even though he is not intellectually disabled, he is entitled to the same protection under *Atkins v. Virginia*, 536 U.S. 304 (2002), which held that the Eighth Amendment prohibits execution of the intellectually disabled. The circuit court also framed this as an "extension-of-*Atkins*" claim and denied it as procedurally barred, untimely, and without merit.

We agree that this claim is procedurally barred because it, or a variation of it, has been raised in a prior proceeding. In Claim 5 of his initial motion for postconviction relief, Barwick argued that

because he is intellectually disabled, his execution would violate the Eighth and Fourteenth Amendments under *Atkins*. *See Barwick*, 88 So. 3d at 92 n.6 (identifying as Claim 5 of Barwick's initial postconviction proceedings that "Barwick is ineligible for the death penalty pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002), and section 921.1[3]7, Florida Statutes (2010), because he is [intellectually disabled]").

Similarly, as explained in Issue 2, Claim 22 in Barwick's initial postconviction proceedings was that because he suffers from neuropsychological impairments, a mental and emotional age of less than eighteen years, and lacks the requisite highly culpable mental state his execution would violate the Eighth and Fourteenth Amendments. And in Argument 1 of his state habeas petition, Barwick also argued that his execution would violate the Eighth and Fourteenth Amendments, due to his brain damage, mental impairment, mental and emotional age of less than eighteen years, and lack of the requisite highly culpable mental state.

At their core, all three of the aforementioned prior claims and the instant claim on appeal have posited that Barwick should be exempt from execution due to his mental deficiencies. Thus, the

instant claim is a variation of claims that were raised in prior proceedings, and as such, is procedurally barred.

Even if this claim had not been raised in a prior proceeding, it is still procedurally barred because it could have been raised previously. *See Branch*, 236 So. 3d at 986 (holding that an extension-of-*Roper* claim was procedurally barred in an active warrant case because it could have been raised previously); *Simmons v. State*, 105 So. 3d 475, 511 (Fla. 2012) (rejecting as procedurally barred a claim, based on *Roper* and *Atkins*, that the defendant was exempt from execution based on mental illness and neuropsychological deficits because it could have been raised in prior proceedings).

This claim was also properly denied as untimely. Barwick asserts that the circuit court erred in denying this claim as untimely, because, according to Barwick, procedural bars do not apply to claims of categorical exemption from execution. Barwick is wrong. Procedural bars do apply to exemption-from-execution claims. *See Dillbeck*, 357 So. 3d at 100 (holding that this Court's precedent "flatly refutes Dillbeck's contention that no time limits apply to categorical exemption claims").

Finally, even if it were not procedurally barred or untimely, this claim is without merit. As we have very recently reiterated, "the categorical bar of *Atkins* that shields the intellectually disabled from execution does not apply to individuals with other forms of mental illness or brain damage." *Id.*; *see also Carroll v. State*, 114 So. 3d 883, 887 (Fla. 2013) (rejecting as untimely, procedurally barred, and meritless, claim that the protections of *Atkins* and *Roper* should be extended to defendant who is less culpable as a result of mental illness); *Simmons*, 105 So. 3d at 511 (holding claim that persons with mental illness must be treated similarly to those with intellectual disability due to reduced culpability to be without merit); *Lawrence v. State*, 969 So. 2d 294, 300 n.9 (Fla. 2007) (rejecting assertion that the Equal Protection Clause requires extension of *Atkins* to the mentally ill due to their reduced culpability).

This claim is also meritless because, like Barwick's *Roper*-extension claim, under the Eighth Amendment conformity clause in article I, section 17 of the Florida Constitution, this Court must interpret Florida's prohibition against cruel and unusual punishment in conformity with decisions of the Supreme Court,

which has limited the categorical ban announced in *Atkins* so that individuals with mental deficiencies other than intellectual disability are outside the scope of that ban. Just as this Court lacks the authority to extend *Roper* to individuals over the age of seventeen, it also lacks the authority to extend *Atkins* to individuals who, like Barwick, are not intellectually disabled as provided in *Atkins*. Thus, Barwick's "trifecta of vulnerabilities" does not exempt him from execution.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's order summarily denying the second successive postconviction motion and its orders sustaining the objections to the public records requests and denying a stay of execution.

No motion for rehearing will be entertained by this Court. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
LABARGA, J., concurs in result with an opinion.

LABARGA, J., concurring in result.

As the majority observes, "post-warrant litigation is arduous," *see* majority op. at 7, and a death warrant by its very nature requires expedited proceedings. However, these solemn proceedings ultimately involve carrying out a sentence of death for the most aggravated and least mitigated of murders and must still ensure due process of law. I am extremely concerned by the recent pace of death warrants and the speed with which the parties and involved entities must carry out their respective duties.

Barwick has raised concerns about the accelerated timetable and argues that "[t]he death warrant proceedings in [his] case lacked any indicia of meaningfulness." While I agree that Barwick's claims are not entitled to relief under this Court's precedent, I nonetheless caution that even in this final stage of capital proceedings, a meaningful process must be ensured.

An Appeal from the Circuit Court in and for Bay County,
    Christopher N. Patterson, Judge
    Case No. 031986CF000940XXAXMX

Robert Friedman, Capital Collateral Regional Counsel, Karin L. Moore, Assistant Capital Collateral Regional Counsel, and Drew A. Sena, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

for Appellant

Ashley Moody, Attorney General, Jason W. Rodriguez, Assistant Attorney General, and Steven Edward Woods, Assistant Attorney General, Tallahassee, Florida,

for Appellee